MURPHY et al. v. ARGONAUT OIL CO. et al.
(No. 1212—5007.)

Commission of Appeals of Texas, Section A.
Jan. 29, 1930.

Frank C. Briggs, of New York City, and Garland A. Tunstill and Clay Cooke, both of Fort Worth, for plaintiffs in error.

Phillips, Trammell & Chizum, of Fort Worth, for Straughan.

W. D. Caldwell, of Houston, for Costley.

McLean, Scott & Sayers, of Fort Worth, for defendants in error Scott and Argonaut Oil Co.

Capps, Cantey, Hanger & McMahon, of Fort Worth, for defendant in error Johnson.

HARVEY, P. J. The validity of a sale by J. P. Straughan in September, 1922, as receiver for the Argonaut Oil Company, to W. B. Scott of certain oil and gas leases situated in Comanche county, Tex., is involved in this controversy. The Argonaut Oil Company is a corporation organized under the laws of the state of Delaware, and during March, 1922, and prior thereto, maintained an office in New York, where the meetings of its board of directors were held. Prior to July 3, 1922, the corporation held permit to do business in Texas, but such permit was canceled by the state on the last named date. The principal office of the corporation in this state was maintained in Fort Worth. W. E. Brady, the president of the company, was in charge of this office and the records thereof. The assets of the company were situated in this state, and practically all the assets consisted of said leases. There were a number of wells on the leases. Prior to March 15, 1922, these wells were being operated by the company for the production of oil and gas. On February 12, 1922, Tol Johnson recovered a judgment in the district court for the Sixty-Seventh judicial district of Texas, against the above company, and another, jointly and severally, in the sum of thirteen thousand

and some odd dollars. No appeal was prosecuted from this judgment. An abstract of the judgment was filed and recorded in the office of the county clerk of Comanche county on February 28, 1922. Johnson also caused a writ of garnishment to be issued on the judgment, which was served on the bank in Fort Worth where the funds of the company were on deposit.

On March 13, 1922, J. Lee Costley filed suit against said company in the district court for the Seventeenth district at Fort Worth. This suit was for the recovery of some $20,-000 alleged to be owing by the company to Costley. At the time the suit was filed, Costley caused a writ of attachment to issue therein, and caused same to be levied on the company's leases in question. After this attachment was levied, Costley, on March 15, 1922, filed in his said suit an application for the appointment of a receiver to take charge and control of all the properties and assets of said company in this state. The said company was then, and still remains, insolvent. As grounds for the appointment of a receiver, the applicant set up in his application the alleged indebtedness of the company to him and the pendency of his suit therefor; the issuance and levy of the writ of attachment, and the lien created thereby; the fact that the company's properties consisted of the leases above mentioned; the fact that the company was indebted in large amounts to divers persons other than the applicant; the fact of the insolvency of the company; the fact of the recovery by Tol Johnson of the above judgment against the company, and the fixing of the judgment lien on all the leases above mentioned; the issuance and service of the writ of garnishment under this judgment; the fact of the insolvency of the company and its inability, for lack of funds, to continue operating the leases; the fact of threatened dissipation of the property, with resultant loss of the applicant's debt against the company. The prayer of the application reads as follows:

"Wherefore plaintiff prays that this honorable court take charge and control of the properties and assets of said defendant in this state, and that a receiver be appointed for said defendant, with authority to operate, care for, keep and maintain its properties and assets, pending the trial of this suit, with such authority, duties and powers as to the court may seem proper."

This application was presented, on the day it was filed, to the judge of the Seventeenth district court, which court was then in session. The judge set down the application for hearing at a later hour of the same day. At the appointed time, the application came on to be heard, and W. E. Brady, the president of said company, appeared in behalf of the company at such hearing. The company was also represented by counsel at the hearing.

The court, after hearing the application and the evidence offered in support thereof, granted the application, and duly entered an order appointing J. P. Straughan as receiver, with authority to take possession and control of all the books, papers, properties and assets of the company in this state, and enjoining and restraining all persons whomsoever, including said corporation, from interfering, in any manner, with the possession, control, and management of said properties by the receiver, under the orders of said court. Straughan at once qualified and entered upon the discharge of his duties as receiver.

On May 9, 1922, the law firm of McLean, Scott & McLean, of which W. B. Scott was a member, filed answer, in behalf of the Argonaut Oil Company, to the petition filed by J. Lee Costley in the latter's suit for recovery of his debt against the company. This answer consisted of a general demurrer to the plaintiff's petition and a general denial of its allegations. On June 23, 1922, Tol Johnson, with leave of the court, filed his petition of intervention in said receivership proceeding; in which petition he set up, as a claim against the Argonaut Oil Company, the balance due on his judgment obtained in the Sixty-Seventh district court on February 7, 1922.

The due filing and recording of an abstract of this judgment in Comanche county is alleged in the petition of intervention, and the lien thereby fixed on the leases in question is asserted. There is a prayer in said petition for an order directing the receiver to sell the leases in question, and from the proceeds to pay the intervener the amount of his claim. On July 31, 1922, the above petition of intervener, Tol Johnson, came on to be heard before the Seventeenth district court, and that court, upon such hearing, entered an order establishing and allowing the claim of Johnson, in the sum of $12,614.49, as a valid claim against the Argonaut Oil Company, and also establishing, as a first and superior lien on said leases, the judgment lien alleged by the intervener. By the terms of this order, the receiver, Straughan, was directed to sell all the leases in question, on August 25, 1925, between the hours of 10 a. m. and 4 p. m., said sale to be held in the Seventeenth district courtroom in Fort Worth in Tarrant county, Tex.

It is further provided in said order that such sale should be subject to confirmation by the court, upon report thereof by the receiver, and that, at such sale, Tol Johnson be allowed to bid the amount of his claim, or so much thereof as he saw fit. The receiver was further directed to pay, from the proceeds of the sale, the claim of Tol Johnson in full. The receiver proceeded to give public notice of the proposed sale, under this order, by publication in a newspaper published in Fort Worth. Shortly after the above order of sale was made, J. P. McEwan, who in the

meantime had succeeded W. E. Brady as president of the Argonaut Oil Company, came down to Fort Worth from New York, and had a conversation with W. B. Scott in regard to the Tol Johnson claim and the pending sale of said leases. In this conversation he expressed a desire to make some sort of arrangement by which the leases would not be entirely lost to the individual stockholders of the corporation. Scott thereupon agreed, in effect, to buy the claim of Tol Johnson and bid on the leases at the receiver's sale.

It was further agreed between Scott and McEwan that the former would act in the matter as trustee for all stockholders who saw fit to contribute to a fund for the reimbursement of Scott for all sums expended by him in such purchases, together with the additional sum of $5,000, as compensation to Scott for his legal services. On August 25, 1922, before the sale by the receiver took place, W. B. Scott, in pursuance of this agreement, bought with his own money the claim of Tol Johnson for the sum of $7,500, and received from Johnson a written assignment of the latter's said claim and all his rights thereunder.

Thereafter, on the same day, the receiver, at the time and place specified in the order of the court of date July 31, 1922, offered all the leases in question for sale, in pursuance of said order. W. B. Scott bid the sum of $10,000 for the property, which was the highest bid, and the property was knocked off to him. There is evidence to show that the value of the property, at the time, did not exceed the amount of Scott's bid. The receiver made due report of the sale, and the court, by order duly entered on September 21, 1922, approved and confirmed the sale to Scott for the sum of $10,000, which sum was required to be credited on the Tol Johnson claim held by Scott; and the receiver was directed to execute the necessary conveyance to Scott, which was done. Scott went into possession of the property under this conveyance, and still holds possession of the property, as trustee for the contributing stockholders, in accordance with the agreement that was made between him and McEwan. The receivership proceedings were afterwards closed and the receiver discharged.

At the time of the filing of the Costley suit against the Argonaut Oil Company, in March, 1922, that company was indebted to the plaintiff in error J. Myron Murphy in the sum of $25,000, on certain promissory notes, which had been executed to him by the company. On June 18, 1922, the notes being unpaid, Murphy brought suit on them in a court of competent jurisdiction in New York, and on September 4, 1922, judgment was rendered by that court in favor of Murphy against the company, on the notes. On May 26, 1925, Murphy brought the instant suit in the district court for the Seventeenth district, at Fort Worth, against the Argonaut Oil Company, W. B. Scott, J. P. Straughan, and others, seeking, among other things, to recover judgment against the Argonaut Oil Company for the amount due on the judgment rendered against that company by the court in New York, and to have the receiver's sale to Scott declared invalid and the property involved in such sale subjected to the payment of the judgment sought by Murphy herein against the oil company.

The case was tried to a jury, and verdict was returned on special issues. The special issues which were submitted to the jury, and the answers made thereto by the jury, are as follows:

"Special Issue No. 1: Question: Did the defendant, Walter B. Scott, buy the properties of the Argonaut Oil Company from the receiver in good faith, as trustee for such persons as might thereafter contribute to a fund to reimburse him for the purchase price thereof? Answer: Yes.

"Special Issue No. 2: Question: Did Walter B. Scott, at the time of the receiver's sale, take an assignment to himself of the properties of the Argonaut Oil Company for the use and benefit of the said Argonaut Oil Company? Answer: No.

"Special Issue No. 3: Question: Did Walter B. Scott, in the purchase of said properties from the receiver, do so for the purpose of defrauding J. Myron Murphy or any other creditor? Answer: No.

"Special Issue No. 4: Question: State and find from the evidence whether J. Myron Murphy knew of the pendency of the receivership proceedings in cause No. 59708, J. Lee Costley vs. Argonaut Oil Company, in the 17th. District Court of Tarrant County, Texas, before the sale by the receiver under the Tol Johnson intervention. Answer: Yes.

"Special Issue No. 5: Question: Did the defendant, Walter B. Scott, in filing cause No. 64876, styled Walter B. Scott vs. Geo. E. Wye, et al., and in taking the subsequent proceedings had in that cause, act in good faith for the purpose of establishing his debt, if any, and foreclosing his lien, if any? Answer: Yes."

No other special issue was submitted and no other was requested. Special issue No. 5 relates to matters which occurred after the receiver's sale to Scott was consummated. In view of the conclusion which we have reached, all matters occurring subsequent to such sale become immaterial to a decision. For this reason, the facts relating to this issue have not been stated by us. Upon return of the verdict of the jury on the above special issues, judgment was rendered by the trial court in favor of Murphy against the oil company for the amount of his claim sued on; and in favor of W. B. Scott, sustaining the sale made by the receiver to Scott, and quieting the latter's title to the property pur-

chased by him at such sale. No complaint is made here of the judgment in favor of Murphy against the oil company; but the branch of the trial court's judgment which is in favor of Scott is assailed by Murphy. The Court of Civil Appeals reversed the judgment of the trial court in this respect. 299 S. W. 488.

The questions raised on this appeal go to the validity and legal effect of said receiver's sale to Scott. Numerous grounds for the invalidation of the sale are set up and urged by Murphy. Although all these grounds have been duly considered, no useful purpose can be subserved in discussing them all.

■■ It is claimed that the receivership proceeding in the Seventeenth district court was merely ancillary to the suit of Costley against the company, and that said court had no jurisdiction, under the pleadings filed in that case, to appoint a general receiver for the assets of the company in this state. The averments of the application for the appointment of a receiver were such, we think, as to call into action the power of the court to take custody and control of all the properties of the company in this state, and administer them through a general receiver. R. S. art. 2293. Upon the hearing of the application and the evidence, the court exercised this power by taking charge of such properties through the receiver appointed by the court. The receivership thus opened was a general one, and was not merely ancillary to Costley's suit for debt. In legal effect, the receivership proceeding, although nominally begun and conducted in the suit which had been brought by Costley against the company for the debt claimed by him, was an independent proceeding. Having, in this proceeding, taken custody and control of the properties of the company in this state, the court had the power to adjudicate the claims of creditors and to sell the properties in satisfaction of such claims.

■ It is further claimed that the hearing of the Tol Johnson petition of intervention was ex parte and without notice. Even should these facts be conceded, the order entered by the court at such hearing would not be rendered void thereby. The court had jurisdiction of the subject-matter and of the receiver; it had the power to adjudicate the rights of Johnson as presented in the petition of intervention, and to direct the sale of the property covered by the lien alleged by Johnson. Nor is said order shown to be voidable, on the grounds just stated, at the instance of Murphy. The claim of Johnson was founded on a subsisting judgment, valid on its face, which had been rendered by the Sixty-Seventh district court, and which had been fixed as a lien on the property in question, prior to the receivership. The rights of Johnson under such judgment, so far as said property was concerned, were superior to those of Mur-

phy; and the latter shows no legal injury resulting to him from the fact, if it be a fact, that the hearing of Johnson's petition of intervention was ex parte and without proper notice as claimed. So far as appears from the record before us, the court would have been required to enter the order it did, even though Murphy himself had appeared at such hearing and contested Johnson's claim.

■■ It is further insisted that, inasmuch as the oil company was insolvent at the time, and McEwan was president of the company, the agreement that was made between Scott and McEwan, and the purchase by Scott of the Tol Johnson claim in pursuance of that agreement, inured to the benefit of the corporation and its creditors. The operation, in a proper case, of the rule of equity upon which this contention is based may be conceded. But the situation before us does not call the rule into operation. McEwan, though president of the corporation, had no control of the property in question. The company was insolvent. Its permit to do business in this state had been canceled. The assets of the company had been taken in charge by the district court for the Seventeenth district, and was being administered under the direction of the court. For all practical purposes, the authority of the officers of the corporation had been entirely superseded by that of the court, so far as the company's assets were concerned. The corporation, though retaining corporate life, had ceased to do business as a going concern. It was without means to pay the Tol Johnson claim, under which the property of the corporation was about to be sold by the receiver under the direction of the court. In these circumstances there can be found no equitable ground for denying to McEwan the right to arrange, as he did, for the acquisition by Scott, of the claim of Tol Johnson, together with all appertaining rights, for the individual use and benefit of the contributing stockholders.

The condition of affairs was such that McEwan did not, in any substantial respect, occupy a fiduciary relation to the property in controversy or to the creditors of the corporation. He was under no legal or moral duty to the general creditors of the corporation, by virtue of his holding the office of president of the corporation, to refrain from securing to stockholders, in their individual right, all the benefits arising from the carrying out of the agreement between him and Scott. In pursuance of this agreement, Scott bought the property in controversy here, and the trial court has impliedly found that the sale was fairly conducted, and that the property, at the time, was worth no more than Scott gave for it. We conclude that the verdict of the jury and the implied fact findings of the trial court sustain the validity of the receiver's sale to Scott; and that, subject to the terms of the trust agreement under which he acted in

making the purchase, Scott took indefeasible title under such sale. Starkweather v. Jenner, 216 U. S. 524, 30 S. Ct. 382, 54 L. Ed. 602, 17 Ann. Cas. 1167; R. R. v. Ketchum, 101 U. S. 289, 25 L. Ed. 932.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court be reversed, and that the judgment of the trial court be in all things affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the District Court affirmed, as recommended by the Commission of Appeals.