## LIPSCOMB COUNTY et al. v. SECURITY TRUST CO. et al.

### No. 11544.

Court of Civil Appeals of Texas. Galveston.

July 22, 1943.

Rehearing Denied Dec. 2, 1943.

724

Roy Sansing, of Higgins, for appellant Lipscomb County.

Maurice R. Bullock, of Fort Stockton, for appellant Pecox County.

W. A. Griffis, Jr., of Dallas, and Alton Freeman, of Seminole, for appellant Gaines County.

Joe E. Webb, of Madisonville, for appellant Madison County.

Frank Hartgraves, of Menard, and E. H. Swaim, of Eden, for appellant Concho County.

Homer Moss, of Wheeler, and Lewis M. Goodrich, of Shamrock, for appellant Wheeler County.

James E. Wheat, of Woodville, for appellant Tyler County.

Ike D. White and H. Grady Chandler, both of Austin (White, Taylor & Chandler, of Austin, of counsel), for all appellants.

Dan Moody, W. D. Hart, Coleman Gay, and Charles L. Black, all of Austin (Hart & Brown and Black, Graves & Stayton, all of Austin, of counsel), for appellees.

GRAVES, Justice.

This statement, conceded by the appellees to be substantially correct, has been presented here by the appellants:

"This suit was filed by seven counties and two Road Districts of Texas, towit: Lipscomb, (including its Road District No. 4), Pecos, Gaines, Madison, Concho (along with its Road District No. 1), Wheeler, and Tyler, as plaintiffs, against the Security Trust Company of Austin, Texas, a banking corporation, and others, as defendants, to recover the balance of the deposits of each county of road funds deposited with the Security Trust Company as a special county depository, and to enforce the liability of the directors of the Security Trust Company as Trustees of the creditors after the dissolution of the corporation to the extent of the value of the property coming into their hands after the Security Trust Company was discharged from receivership, and also to enforce an equitable lien upon property alleged to belong to the Security Trust Company.

"The suit was originally filed in the 53rd District Court of Travis County Texas, and later transferred to the 126th District Court of the same county.

"The cause came on for hearing on plaintiff's second amended original petition and the exceptions contained in defendants' second amended original answer.

"The court sustained exceptions Nos. 1 to XIV, inclusive, and No. XVI of defendants as to the claims of all counties, except the claim of Madison County growing out of the first-settlement with the Security Trust Company, and the claim of Concho County growing out of the second-settlement with the receiver; it sustained exceptions VII, VIII, X, XII, and XIII (8), as to these two claims, also exception XV as to the last-mentioned one of Concho County. Whereupon, plaintiffs declined to amend further, and the court dismissed the entire cause, they giving notice of appeal.

"The appeal was perfected to the Third Court of Civil Appeals, but, on order of the Supreme Court, was thereafter transferred to this court."

Since the cause was so determined in solido below upon exceptions, the over-all question of law posed here is whether or not the pleadings of any of the appellants stated a justiciable cause of action in any particular.

Stated in another way, it is whether or not the subsequent settlement contracts declared upon by the appellant-counties as the invasion basis for their effort to recover from and enforce against the appellee Trust Company and its successors in interest the balance of their road fund deposits with it, whereby they undertook to take title to the securities it had originally put up against those deposits and to release the Trust Company from all further liability to them on account thereof, constituted either such compromises of claims due the respective counties as violated R.S. Article 2351, or such releases of indebtednesses due them as contravened Article 3, Section 55, of the Constitution of Texas, Vernon's Ann.St.

In other words, the several counties and Road Districts sought by this suit to have declared invalid and void ab initio, as having been prohibited by the statutory and constitutional provisions cited, certain contracts their several commissioners' courts had voluntarily made, beginning in November of 1933 and ending before his discharge in 1940, with the Trust Company, through its receiver then administering its affairs in the 126th District Court of Travis County, whereby they, the counties—as indicated supra—had so undertaken to agree with such receiver, who, they alternatively alleged, had acted under approved orders of that court, that they would then take over in absolute title the securities the Trust Company had originally put up with the American National Bank, of Austin, as security for their road-bond deposits, and would release its principal, the Trust Company, from all further liability to them growing out of such original deposits.

In so pleading, they initially set out the respective amounts of road-bond deposits each had originally made with the Trust Company, under mutual knowledge and understanding between them that the bonds had been voted and would only be used for the building of State highways, as well as whatever credits they had subsequently received thereon; and, as their quoted general statement has indicated, they sought in straight counts—as for debt—to recover the specifically declared-upon balances alleged to be then due them· from the Trust Company on account thereof; they followed that up with averment of the settlement agreements they had, at various dates during the years 1933 to 1940, undertaken

to make with the then representative of the Trust Company—the receiver therefor appointed by the 126th District Court—to compromise their claims by the device of taking over as their own property the securities he held for it, and to release the Trust Company from any further liability to them; in the alternative, by paragraph 8-g of their trial petition, they further averred that the receiver, in so essaying to make such compromise settlements with them, had acted under approval orders of the court so appointing him.

They declared at length that all their contracts of settlement so issued had been utterly invalid ·and void, because made in compromise of, and for less sums than were then due on, their several declared-upon debts against the Trust Company; hence those agreements had been expressly prohibited by invoked Article 3, Section 55, of the Constitution of Texas, and Article 2351, Revised Statutes of Texas.

The appellees, in turn, after so having acquiesced in appellants' general statement, thus point out what, in their view, constitutes the Achilles-heel of infirmity in the appellants' whole case, towit: "The 'Statement of the Nature of the Case', set forth on pages 1 and 2 of Appellants' Brief, is substantially correct. On page 1 it is stated that the suit was brought 'to recover the balance of the deposit of each county' with the Security Trust Company. This statement brings out clearly the true nature of the suit—a collateral attack upon the orders of the receivership court (126th District Court), in Cause No. 52,566, State of Texas vs. Security Trust Company of Austin, Texas. If the suit had been a direct attack on the receivership orders in question, it would have been described as such. Its true nature is further exposed by the fact that, when the appellants came to file it, they filed it in the Fifty-Third District Court of Travis County, and not in the court in which the orders in question were entered, the 126th District Court, or in the court in which the receivership was closed, the 98th District Court."

Their above-enumerated exceptions, which the trial court sustained, were in substance and purport grounded upon the same general defenses—that appellants' suit had constituted a collateral attack upon the ·orders of the 126th District Court, as well as the 98th District Court, which two tribunals had successively administered the

receivership over the Trust Company involved; upon that claim of collateral attack, the exceptions, pointed out further objections to the effect that the appellant-counties had been parties to the receivership proceedings, hence were bound by its orders and proceedings; that they had failed to show that the agreed settlements with the receiver had been such mere compromises as would invalidate the receivership court's orders of approval thereof; that such approval orders constituted res adjudicata of the validity of such settlements as against appellants; that the receivership court, at least, had jurisdiction to both construe such settlement contracts and to determine whether they did or did not evidence such prohibited compromises; that the challenged approval orders of the receivership court constituted adjudications as to the existence of all facts fixing the jurisdiction of that court over them and the subject matter, adversely to the appellants; that such court's judgment of approval of such settlements constituted, in effect, a short-circuit foreclosure against appellants of all title to the securities therein involved; and, finally, that appellants' allegations on the face thereof showed that they had already appropriated the securities to their own use and benefit, and could not then either repudiate the conditions under which the same had been delivered to them, or make restitution thereof, or therefor, in whole or in part.

Appellees support these answers so presented by their exceptions to appellants' contentions that the stated orders of the receivership court are void and subject to collateral attack—in that, under the invoked constitutional and statutory provisions, the counties were without power to make any such agreements, nor could the courts enforce such against them—with these, among other, authorities: Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329; Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216.

■ In this court's opinion neither of these decisions rules the facts so declared upon by appellants in this instance; that is, those holdings were based, in part at least, upon the principle of estoppel, which does not apply against arms of the State government in Texas, like its counties, that had the right, if not the duty, under our statutory Article 2351, and Article 3, Section 55, of our Constitution, at any time to

have a contract, if void on its face for lack of power on the part of its officers to enter into it, declared to be of no effect.

That is, this cause in its ultimate reaches is not thought to be analogous either to Chicot v. Baxter or Massachusetts v. Davis, so relied upon in the main by the appellees, but rather to T. & N. O. R. R. Co. v. Galveston County, Tex.Civ.App., 161 S. W.2d 530, and Id., Tex.Com.App., 169 S. W.2d 713.

■ The controlling inquiry here, comparable to that in the Galveston case, appears to be a straightaway one of whether the settlement contracts so entered into between these counties and' the receiver (whether or not acting under orders of the court controlling him) constituted prohibited compromises and releases of· debts due the counties within the meaning of our prohibitory law; if they did, they were invalid and void for the lack of power in the counties to make them, just as this court and the Supreme Court held was the contract of Galveston County to indemnify the Railroad Company for damages it might have to pay as the consequence of its own negligence in operating the lift bridge in the causeway.

The two provisions involved, in so far as material, are these:

That from the Constitution: "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State or to any county or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years."

That from the Statutes:

"Art. 2351. * * *

"Each commissioners court shall: * * *

"10. Audit and settle all accounts against the county and direct their payment."

Since the form of this quoted statute at the time these settlement contracts were made with appellant-counties was the same as when the Supreme Court construed it, in Bland v. Orr, 90 Tex. 492, 39 S.W. 558, as conferring no such power upon the commissioners' courts, no reason appears for not holding that to be still the law.

Especially so since the clear-cut constitutional prohibition against their releasing

a debt owing to their counties stood unchanged back of that statute all along. Baldwinn v. Travis County, 40 Tex.Civ. App. 149, 88 S.W. 480; Delta County v. Blackburn, 100 Tex. 51, 93 S.W. 419; Blackburn v. Delta County, 48 Tex.Civ. App. 370, 107 S.W. 80, (writ of error refused); Potter County v. Slaughter, Tex. Com.App., 254 S.W. 775; Ashburn Bros. v. Edwards County, Tex.Com.App., 58 S. W.2d 71.

■ Wherefore, the rule of estoppel applied by the United States Supreme Court in Chicot v. Baxter, where there was a bona fide judgment of a court resting upon a presumably constitutional statute— which, upon an analogous situation, was followed by the Supreme Court of Texas in Massachusetts v. Davis—both supra, has no controlling application here, because of the materially different facts already recited; this for the reason that, in circumstances like these, it is well settled in Texas (1) that estoppel does not apply to a county acting as a subdivision of the State in aid of the State's sovereign powers, Scaling v. Williams, Tex.Civ.App., 284 S.W. 310; National Surety Co. v. State Bank, 119 Tex. 353, 29 S.W.2d 1027; City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308; Nunn-Warren Pub. Co. v. Hutchison County, Tex.Civ.App., 45 S.W. 2d 651, error refused; (2) that it is sufficient to make a collateral attack on an order, if the lack of jurisdiction and lawful authority appear upon the face of the record, which includes not only the orders themselves but also the pleadings upon which they were based, Bearden v. Texas Co., Tex.Civ.App., 41 S.W.2d 447; affirmed Tex.Com.App., 60 S.W.2d 1031; (3) that, while limitation, laches, neglect, or the doctrine of res adjudicata, might bar an attack upon a merely voidable contract, the rule is otherwise as to one that is inherently void to the extent of so reflecting its nullity from the face of the accompanying record, "for it is an outlaw that any one may attack whenever the occasion offers." White v. Hidalgo, Tex.Civ.App., 6 S.W.2d 790, 792.

■ It is neither held that the 126th District Court's approval-orders, nor what are termed the "bar-orders" of the 98th District Court, are wholly invalid against all parties and subject matter therein dealt with, but only that they were all ineffective and unenforceable, as affects these appellants, because of their governing bodies' abortive attempts to utter contracts they were by positive law denied the power to make.

■ So that, taking appellants' averments as to the agreements made by the counties to take the securities and release the Trust Company from all liability as true, it is further held that such transactions constituted both compromises of claims and releases of indebtednesses due the counties in violation of Article 2351 of our Statutes, as well as of Section 55, Article 3, of our constitution.

To say the least of them, these settlement contracts were distinctive, in that the Trust Company, originally as "a special county depository", to quote appellants' averment, "in accepting said funds on deposit, as aforesaid, accepted same with the knowledge that same were funds belonging to each of said counties and Road District No. 4, and Road District No. 1, and that same were road funds of each of said counties, Road District No. 4, and Road District No. 1, and that same had been appropriated and set aside for the purpose of constructing roads in each of said counties."

When, in 1933 thereafter, that depository having meanwhile become unable to repay such deposits and gone into a receivership, the counties voluntarily proposed the settlements under review, the Trust Company's receiver applied for and obtained the 126th District Court's "approval-orders" of those agreements upon his representation to the court that "a trade and exchange of the securities herein mentioned and described in discharge of the account of Lipscomb County, Texas, in full, would be of great advantage to the Security Trust Company, would reduce its general indebtedness to the extent of the credit herein allowed and would be in excess of the amount that could be realized by this Receiver through a sale of said securities on the open market."

These conclusions determine the merits of the appeal. They require that the trial court's judgment of dismissal be reversed, and that the cause be remanded. It will be so ordered.

Reversed and remanded.