SECURITY TRUST COMPANY OF AUSTIN, TEXAS, ET AL. V. LIPSCOMB COUNTY, TEXAS, ET AL.

No. A-13. Decided April 12, 1944.
Rehearing overruled May 24, 1944.
(180 S. W., 2d Series, 151)

574

*Dan Moody, W. D. Hart, Coleman Gay, Charles L. Black, Hart & Brown* and *Black, Graves & Stayton,* all of Austin, for petitioner.

Judgments of receivership courts are not subject to collateral attack and, from the record, it does not appear that its judgments were void for want of jurisdiction. Commonwealth of Mass. v. Davis, 140 Texas 398, 168 S. W. (2d) 216; Williams v. Robinson, 63 Texas 576; Morrow v. Corbin, 122 Texas 553, 62 S. W. (2d) 641.

The counties, having affirmed the judgments in the former receivership case by selling the property received under them, cannot now disaffirm same. Matlow v. Cox, 25 Texas 578; Dun-

ham v. Randall & Chambers Co., 11 Texas Civ. App. 265, 32 S. W. 720; Smith v. Chipley, 118 Texas 415, 16 S. W. (2d) 269.

The counties, being parties to the receivership suits, are precluded by the orders of the court giving all parties a right to file their claims within a given time. Waters-Pierce Oil Co. v. State, 103 S. W. 836; Leadville Coal Co. v. McCreery, 141 U. S. 475; 52 C. J. 236.

*Roy Sansing*, of Higgins, *Maurice R. Bullock*, of Fort Stockton, *W. A. Griffis* and *Alton Freeman*, both of Seminole, *Joe E. Webb*, of Madisonville, *Frank Hartgraves*, of Menard, *E. H. Swain*, of Eden, *Homer Moss*, of Wheeler, *Lewis M. Goodrich*, of Shamrock, *James E. Wheat*, of Woodville, *Ike D. White, H. Grady Chandler* and *White, Taylor & Chandler*, all of Austin, for respondents.

In response to above propositions cited Grant v. Ellis, 50 S. W. (2d) 1093; Easterline v. Bean, 121 Texas 327, 49 S. W. (2d) 427; Cline v. Niblo, 117 Texas 474, 8 S. W. (2d) 633; White v. Hidalgo County Water District, 6 S. W. (2d) 790; Edwards v. Gifford, 137 Texas 559, 155 S. W. (2d) 786.

MR. JUDGE SMEDLEY of the Commission of Appeals delivered the opinion for the Court.

Respondents, Lipscomb County and six other counties of the State of Texas, sued petitioners, Security Trust Company of Austin, Texas, a dissolved corporation, and several individuals who are directors and stockholders of the dissolved corporation, to recover judgment on separate claims of indebtedness aggregating about $500,000.00. The trial court sustained a number of exceptions to the second amended original petition and when respondents declined to amend, dismissed the suit. That judgment was reversed by the Court of Civil Appeals and the cause was remanded. 175 S. W. (2d) 723.

Exceptions sustained by the trial court to the counties' first amended petition had the effect of requiring them in their second amended petition to allege the substance of certain proceedings in a prior suit brought by the State of Texas against Security Trust Company of Austin, Texas, in which a receiver of the properties of that corporation was appointed. These allegations appear in a paragraph introduced by the statement that they are made "in the alternative and only if the same be necessary," and copies of applications and orders

in that suit are attached as exhibits. The action of the trial court in requiring the amendment was correct. In their first petition the counties had alleged that a receiver for the trust company was appointed, that he took possession of all of the property of that company, that the counties made contracts with the receiver whereby it was agreed that the receiver would assign and deliver to the counties in absolute title securities that the trust company had pledged to secure deposits made by the counties with it, the counties, in consideration therefor, to release all claims that they had against the trust company by reason of the deposits, and that the securities were delivered to the counties and accepted and sold by them. The suit attacks the validity of the contracts. In the absence of allegations that the acts of the receiver were not authorized by the court the necessary implication from the allegations made was that the receiver and his action under them were authorized or approved by the court. Neither the validity of the contracts nor the right of respondents to question their validity in this suit could be determined without information as to what was done by the court or in the court with respect to the contracts. Chapman v. Guaranty State Bank, (Com. App.) 267 S. W. 690, 695; Kneeland v. American Loan & Trust Company, 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379. We shall, therefore, in passing upon the sufficiency of the second amended petition, consider all of its allegations, including the added paragraph relating to the proceedings in the receivership suit. The substance of the material allegations in that petition follows. We state the facts alleged in support of Lipscomb County's claim, since the facts as to the claims of the other counties, except in amounts and dates and in other respects hereinafter mentioned, are substantially the same.

Lipscomb County voted and sold road bonds and deposited the proceeds of the sale with Security Trust Company as the designated depository for the county, the balance of the deposit due and owing to Lipscomb County on May 31, 1933, being $66,423.48. As security for the payment of the funds so deposited with it the trust company placed in the possession of American National Bank of Austin, Texas, securities of the total face value of $68,419.00, being bonds and warrants issued by various cities, counties and districts. On November 27, 1933, the commissioners court of Lipscomb County entered into an agreement with the receiver of Security Trust Company, evidenced by an order duly recorded in the minutes of the commissioners court and signed by the county judge and all of the commissioners, whereby it was agreed that the receiver would "transfer, assign and deliver in absolute title

to Lipscomb County" all of the securities that had been placed in the American National Bank of Austin to secure the payment of the county's deposit with the trust company, and that upon the delivery of the securities to it the county would release and discharge the trust company and its receiver from all claims and demands of every kind by reason of or arising out of the deposit.

Thereupon the receiver filed in the district court of Travis County, where the receivership proceedings were pending, an application to the court, setting out fully the facts as to the deposit of Lipscomb County and the pledging of the bonds and warrants to secure its payment and the agreement that he had made with the county, and prayed the court, after hearing testimony on the application, to enter its order, if the facts warranted it, authorizing him to perform the agreement and to transfer and deliver the securities to Lipscomb County and to demand and receive from the county such receipts and releases as would evidence the transaction and would be a complete release from Lipscomb County of its deposit.

The district court, on December 4, 1933, made and entered its order, reciting that after having heard the application and testimony thereon it was of the opinion that the material allegations of the application were true, many of which, including a description of the securities and the substance of the contract between the county and the receiver, were set out in the order, granting the application, and authorizing the receiver to transfer and deliver to Lipscomb County in absolute property and title all of the securities and ordering and adjudging that by accepting the securities the county would release the trust company and the receiver from all claims and demands that it might have by reason of its deposit and indebtedness.

The securities were delivered to Lipscomb County and accepted by it and thereafter, the date not being alleged, it sold the securities and received for them the total sum of $34,314.78, which was their reasonable market value and their highest market value at any time after the securities were delivered to it.

On October 2, 1939, the district court entered an order requiring all creditors of Security Trust Company to file their claims with the receiver on or before December 31, 1939, and providing that all claims not filed on or before that date

would be forever barred; and on January 2, 1940, the final order was made and entered, discharging the receiver, barring all claims of creditors not theretofore filed, and directing the receiver to deliver all of the assets of the trust company remaining in his hands to the board of directors of that company.

The receiver delivered to the directors of the trust company assets and properties of the approximate total value of $800,000.00, together with other property described in the petition, the value of which is unknown. On January 4 and 31, 1940, the directors and stockholders of Security Trust Company caused the corporation to be dissolved, and the directors are now in possession of the assets and property of the company that were delivered to them, for the purpose of liquidation.

Each of the counties alleges that the agreement made with the receiver to accept the securities in payment and satisfaction of the balance of its deposit with the trust company was wholly void and of no effect, because "the reasonable market value or cash value" of the securities which it agreed to accept and did accept was substantially less than the amount of its debt or claim against the trust company, and that the agreement was therefore a release of a debt owing the county and an agreement to compromise and settle the claim of the county against the trust company, in violation of law. Each alleges that after the agreement was made and regardless of the terms thereof, the trust company remained bound and liable to pay the county the full amount of its claim or deposit, less the benefits that the county received, that is, less the amount that it received from its sale of the securities.

The allegations with respect to the proceedings in the receivership suit, whereby the court approved the agreements made by the receiver and the counties and directed the receiver to surrender the securities to the counties in full satisfaction of their claims, are: that the orders were void and of no effect as to the counties, because the court was without jurisdiction to authorize the receiver to enter into an agreement with the counties to settle or compromise the claims owing to the counties, because none of the counties was a party to the application filed by the receiver or to any of the orders of the court, because the court knew and the applications of the receiver showed that the agreements were void and were made for the benefit of the trust company alone and for the purpose of releasing debts owing to the counties and of compromising and settling claims due the counties, and the court

was without jurisdiction and without authority to validate the void agreements.

■ The statement is made at the beginning of one of the briefs filed by the counties that "the fundamental question involved in this suit is whether the agreements by the counties to take the securities and release the Security Trust Company · from all liability is a compromise of a claim due the county in violation of Article 2351 and a release of an indebtedness due the county in violation of Article 3, Section 55, of the Constitution." In briefs of petitioners the suggestion is made that it does not affirmatively appear from the allegations of respondents' petition that the value of the securities delivered to the counties were less than the amounts of their debts. This, because of allegations in the petition that the "reasonable market value or cash value" of the securities when the contracts were made was less than the amount of the deposits, and because of the fact that the market or cash value of the bonds and securities during the year 1933, which was in the period of the great financial depression, was doubtless much less than their collectible value, they being secured by the taxing power of the counties and districts that issued them, and less than their fair market value under normal and reasonable conditions. In other parts of the petition, however, allegations are made that the values of the securities delivered to and received by the counties were in fact less than the amounts of the debts released. We, therefore, in testing the sufficiency of the petition, construe it as positively alleging that the true or actual values of the securities, however measured, were in fact less than the amounts of the claims. Measured by these allegations, the contracts were invalid. Bland v. Orr, 90 Texas 492, 39 S. W. 558; Texas & N. O. Ry. Co. v. Galveston County, 141 Texas 34, 169 S. W. (2d) 713.

■ From the conclusion expressed above it does not necessarily follow that the trial court erred in sustaining the exceptions to the petition. The controlling question presented by the record is what effect is to be given to the orders of the district court in the receivership suit and to the counties' acceptance of the securities delivered to them under the orders.

That court had jurisdiction of the subject matter of the orders, that is, the claims of the counties against Security Trust Company and the property securing the claims. Murphy v. Argonaut Oil Co., (Com. App.) 23 S. W. (2d) 339; Hammond v. Tarver, 89 Texas 290, 34 S. W. 729; Leadville Coal Co. v. McCreery, 141 U. S. 475, 18 Sup. Ct. 28, 35 L. Ed. 824;

Clark on Receivers, (second edition) Volume 1, p. 356, sec. 269. The judgments and orders of a court, that has custody and control of the property of a corporation through its receiver, approving claims and making disposition of property in satisfaction of claims, are final judgments and they "are subject to attack only by such methods as may be available to set aside other decrees." The rules of estoppel by judgment apply to them, Chapman v. Guaranty State Bank, (Com. App.) 267 S. W. 690, 694; Shaw v. Strong, 128 Texas 65, 96 S. W. (2d) 276; Gibson v. Hale, 57 Texas 405; Continental State Bank v. Waggoner, 48 S. W. (2d) 1026, application for writ of error refused; Magruder v. Drury, 235 U. S. 106, 35 Sup. Ct. 77, 59 L. Ed. 151, 155.

■ The present suit is a collateral attack, not a direct attack, upon the orders entered in the receivership suit. The counties are not asking that those orders be set aside and that the court again try and determine what was determined by the orders. The counties do not offer to restore the securities that were delivered to them pursuant to the orders. By accepting the securities and disposing of them they have placed the restoration of the securities beyond their power. In this suit the counties are contending that they were not parties to the orders. This is an independent suit in which the counties seek to procure an adjudication that the orders were void as to them or void in so far as they approved or undertook to adjudge the satisfaction of the counties' claims, and they sue in this case to recover, notwithstanding those orders, the balance of the amounts of their claims after crediting them with what they procured by their sales of the securities.

In attacking the proceedings in the receivership suit, the counties contend that the orders were void because the court was without jurisdiction to enter an order approving a void contract and that if the orders were not void the counties are not bound by them, because they were not parties to the receivership suit and were not parties to the orders.

■ We consider first the contention that invalidity of the contracts deprived the receivership court of jurisdiction to enter the orders approving the contracts and authorizing their performance. If it be assumed that validity or invalidity of the contracts goes to the jurisdiction of the receivership court rather than to the merits of the question before that court for decision, it is necessary in deciding whether the court had jurisdiction to look first to the record of that case. Upon collateral attack the validity of a judgment cannot be determined except by the

record. Stockyards National Bank v. Presnall, 109 Texas 32, 194 S. W. 384. Unless the record negatives the existence of facts that are essential to the court's jurisdiction, the law conclusively presumes upon collateral attack that those facts were established by the evidence. Crawford v. McDonald, 88 Texas 626, 630-632, 33 S. W. 325; Templeton v. Ferguson, 89 Texas 47, 33 S. W. 329; Moore v. Hanscom, 101 Texas 293, 106 S. W. 876, 108 S. W. 150; Carrol v. McLeod, 133 Texas 571, 577, 103 S. W. (2d) 277.

The receiver's application to the court for approval of the contract that he had made with Lipscomb County contains a recital of the facts as to the deposit made by the county with Security Trust Company, the amount of the balance of the deposit, $66,423.48, the pledge of securities of the face or par value of $68,419.00 to secure the deposit, with a full description of the securities, and the making of the agreement with the county for the delivery of the securities to the county in full satisfaction of the deposit. The application recites that in the opinion of the receiver the acceptance of the offer made would be of benefit to the estate of the Security Trust Company, that the securities "are not salable on the present market for in excess of the credit proposed to be allowed by Lipscomb County, Texas, for said securities, and that the Security Trust Company of Austin, Texas, would not realize for the estate of the Security Trust Company of Austin, Texas, a sum in excess of the credit proposed to be allowed and given by Lipscomb County, Texas, for said listed collateral, and that a trade and exchange of the securities herein mentioned and described in discharge of the account of Lipscomb County, Texas, in full, would be of great advantage to the Security Trust Company, would reduce its general indebtedness to the extent of the credit herein allowed, and would be in excess of the amount that could be realized by this receiver through a sale of said securities on the open market." The receiver prays that the court hear testimony on the application and that after hearing the testimony the court enter its order, if the facts in the judgment of the court warrant it, permitting the receiver to perform the agreement, that is, to transfer and deliver the securities to Lipscomb County and to procure and accept a release of the deposit from the county.

The court's order approving the application sets out many of the facts recited in the application, including the statement of the amount of the deposit and a description of the securities pledged to secure it. The order states that Lipscomb County has proposed to the receiver that he assign and deliver the securities in absolute title and property to the county and that the county

will execute to Security Trust Company and the receiver a release in full for its deposit and debt. The court finds that the securities "at their fair market value, under the present conditions and circumstances, are not worth in excess of the credit offered to be given by Lipscomb County, Texas, as against the deposit." It orders and adjudges that the application of the receiver be granted and authorizes and directs him to assign and deliver the securities to Lipscomb County in absolute property and title. It further orders and adjudges that the transfer of the securities "when accepted by Lipscomb County, Texas, shall be in full of the deposit of Lipscomb County, Texas, with the Security Trust Company of Austin, Texas." Thus the court by its orders gave its full approval to the agreements that had been made between the counties and the receiver and authorized the receiver to carry them into effect.

■ The purpose and materiality of the court's finding, that at their fair market value under present conditions the securities were not worth in excess of the amount owed by the trust company to the county, are apparent. The securities were not the property of the counties. They had been deposited or pledged by the trust company to secure what it owed the counties. The general creditors of the trust company would have been entitled to the benefit of any excess in the value of the securities above what was due the counties. This is not a finding that the securities were not worth as much as the amounts of the deposits. The finding is that they were not worth more.

It is not shown either by the applications or by the orders that the securities agreed to be surrendered to the counties were in fact of a value substantially less than the deposits that the counties agreed to release. Accordingly, the invalidity of the contracts is not shown by the record in the case, and, this being true, it is conclusively presumed that the court found that the contracts were valid. The statement in the receiver's report that the credit allowed the county would be in excess of the amount that could be realized through a sale of the securities on the open market is not a statement of the actual or true value of the secureties. It is merely the expression of an opinion as to what could be realized from sale on the open market, which was then affected by the great financial depression. The court's order contains no approval or adoption of that expression.

■ It is our opinion further that the jurisdiction of the district court in the receivership suit to enter the orders with respect to the contracts was not dependent upon the validity of the

contracts. The court has the authority, and was under the duty, to determine whether the contracts were valid and should be performed. The question went to the merits, not to the jurisdiction.

■ We have expressed the opinion that the contracts, tested by the facts alleged in the petition in this case, were invalid. In the former suit the court may have had other facts before it that would require it, if it decided correctly, to conclude that the contracts were valid. If it had before it the facts that are alleged in the petition in this case, its action in approving the contracts was, in our opinion, erroneous and could have been corrected by appeal, but the orders of approval were not void for want of jurisdiction. Respondents do not contend that the receivership court was without jurisdiction to decide that the contracts were invalid. The point they make is that the court was without jurisdiction to enter an order approving the void contracts. The fault in this position is that it assumes that jurisdiction of a court depends, not upon the character of the case, but upon the court's action in deciding it. As said in Commonwealth of Massachusetts v. Davis, 140 Texas 398, 405, 168 S. W. (2d) 216, the court "had authority to decide this question either rightly or wrongly". See also Moore v. Blagge, 91 Texas 151, 161, 38 S. W. 979; Swift & Co. v. U. S., 276 U. S. 311, 330, 72 L. Ed. 587, 599, 48 Sup. Ct. 311. We hold, for the reasons given, that the orders approving the contracts were not void.

■ Respondent's contention that the receivership court did not pass upon the validity of the contracts cannot be sustained. The contracts were before the court for approval or disapproval and, after hearing evidence, the court approved them and authorized and directed the receiver to perform them. The order of approval necessarily involved the conclusion that the contracts were valid. That conclusion was essential to the decision made. In Shaw v. Strong, 128 Texas 65, 96 S. W. (2d) 276, it was held that the district court, in ordering the sale of assessments against stockholders of an insolvent bank, necessarily had to determine, and did judicially determine, that the assessments or liabilities sold were subject to sale, and further that all parties at interest, the bank, the stockholders and the creditors, were bound by that judicial act. See also Fayerweather v. Ritch, 195 U. S. 276, 25 Sup. Ct. 58, 49 L. Ed. 193; Werlein v. City of New Orleans, 177 U. S. 390, 20 Sup. Ct. 682, 44 L. Ed. 817; Commonwealth of Massachusetts v. Davis, 140 Texas 399, 405, 168 S. W. (2d) 216; Chicot County Drainage District v. Baxter State Bank, 308 U. S. 371, 60 Sup. Ct. 317, 84 L. Ed. 329.

Were the counties parties to the receivership proceedings and consequently bound by the orders that have been discussed?

The general rule is that when a court takes control and custody of the property of a corporation by the appointment of a receiver, all creditors of the corporation are in effect or constructively before the court; and if they have notice of the proceedings, they are bound by the court's orders approving claims and determining rights in and to the property or its proceeds. Hammond v. Tarver, 89 Texas 290, 32 S. W. 511, 34 S. W. 729; id. 11 Ct. Civ. App. 48, 31 S. W. 841; Shaw v. Strong, 128 Texas 65, 96 S. W. (2d) 276; Leadville Coal Company v. McCreery, 141 U. S. 475, 12 Sup. ct. 28, 35 L. Ed. 824; Murphy v. Argonaut Oil Co. (Com. App.) 23 S. W. (2d) 339.

It has been said that the receiver is the legal representative of the creditors. Dockery v. Hanan, 54 S. W. (2d) 1017, 1021 (application for writ of error refused); Hammond v. Tarver, 11 Texas Civ. App. 48, 31 S. W. 841. But the receiver does not act as the agent of the creditors or of any of the other parties. He is officer of the court, the medium through which the court acts. He is a disinterested party, the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property in receivership. Clark on Receivers, (2d Ed.) Vol. 1, pp. 33-37, Secs. 34-38, p. 43, Sec. 45; 45 Am. Jur. p. 106- 111, Secs. 126-130.

The counties did not formally become parties to the receivership suit, that is, by the filing of petitions in intervention. Their relation to the orders approving the contracts was, however, closer than that of mere creditors with notice of the proceedings. The counties entered into contracts with the court's receiver, who brought the contracts before the court for consideration, hearing and approval. After the court approved the contracts and directed the receiver to carry them into effect, the counties accepted the securities which were delivered to them under the court's orders and disposed of the securities as their own. About six years after the orders approving the contracts were entered the receivership was closed and the receiver discharged. During that time, as far as is disclosed by the record in this case, the counties made no applications to the court for change or rescission of the orders and asserted no claims against the receiver or against the property in the court's custody.

In Carpenter v. Pink, 133 Texas 82, 124 S. W. (2d) 981, it is held that one who contracts with a receiver becomes thereby

a party to the receivership proceedings in so far as the contract and rights thereunder are concerned. See also 53 C. J. p. 157, Sec. 196; 45 Am. Jur. p. 175. Sec. 225. It is also held that one who purchases property at a receiver's sale, conducted under order of the court, becomes a party to the proceedings in which the sale was made. Long Island Machine & Equipment Co. v. Baird, 117 S. W. (2d) 565; Kneeland v. American Loan & Trust Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379; Chapman v. Guaranty State Bank (Com. App.) 267 S. W. 690.

Under the foregoing rules, the counties became parties to the receivership suit, because they entered into contracts with the receiver and because they accepted the bonds and warrants surrendered to them pursuant to the contracts and as directed by the court's orders.

There were two courses open to the counties. Had they chosen one, they would have presented their claims to the court and asked for the sale of the securities and the application of the proceeds to their claims. If the securities had not been sold for enough to satisfy their claims, they would have become general or unsecured creditors as to the balance. It now appears from the allegations in the petition that, had they done this and awaited the slow process of liquidation, they would have collected the full amounts of their claims. They chose, however, to take the other course, that is, to obtain immediately possession of the securities with absolute title and to dispose of them at such time and in such manner as they might select. To accomplish this they accepted delivery of the securities under the orders of the court, which expressly provided that the securities when accepted by them should be taken in full satisfaction of the deposit.

The counties cannot be permitted, after accepting the benefits of the court's orders, to repudiate the obligations that the orders imposed upon them. Having become parties to the orders in the receivership suit, the counties are concluded by them. They cannot maintain this suit for a second decision of the question as to the validity of the contracts, and they cannot in this suit recover on claims that, according to the terms of the orders in the receivership suit, were discharged and satisfied by the acceptance of the securities. To hold otherwise would permit a litigant "to use the court in the attainment of his object by piecemeal, by first adopting its judgment as right, and then repudiating it as wrong, and to avail himself of the advantages of its being both right and wrong." Matlow v. Cox, 25 Texas 578, 581; Spence v. State National Bank, (Com. App.) 5 S. W. (2d) 754; 21 C. J. S. pp. 162-163, Sec. 108.

The authorities cited by respondents, holding that counties are not estopped by unauthorized acts of their officers, are cases of equitable estoppel. We have held that the counties are concluded by the court's orders, that is, by the estoppels of judgments. When the state becomes a party to a suit it is subject to the same rules that govern other parties and a judgment for or against it must be given the same effect as would be given if it were an individual litigant. Wortham v. Walker, 133 Texas 255, 269, 128 S. W. (2d) 1138; Oklahoma v. Texas, 256 U. S. 70, 41 Sup. Ct. 420, 65 L. Ed. 831; State v. Cloudt, 84 S. W. 415; Trigg v. Whittenburg, 129 S. W. (2d) 472, 475; Railroad Commission v. Arkansas Fuel Oil Co., 148 S. W. (2d) 895. In each of the three cases last cited application for writ of error was refused. Res. judicata, of course, applies as well to counties, which are subdivisions of the state.

The allegations as to the claim or claims of Madison County differ somewhat from those made by the other counties. It is alleged that in the year 1932, before the appointment of the receiver, Madison County made a contract with the Security Trust Company by which it accepted from the trust company bonds and securities at their face value of $64,651.87 as a credit against its deposit of $87,514.81, so as to leave a balance due the county of $22,862.94. It is further alleged that the bonds so accepted had a reasonable market value or cash value of only $15,031.00; that the contract to accept the bonds at their face value was void; and that by reason of this transaction the trust company became indebted to Madison County in the sum of $49,620.87 in addition to the sum of $13,309.94 as alleged in another paragraph of the petition.

The allegations as to the claim of $13,309.94 are like those made as to the claims of the other counties, and include copies of the proceedings in the receivership court. The application of the receiver for the court's approval of a contract made between him and Madison County states that the county deposited certain funds with the trust company and that said deposit on November 21, 1933, the date when the application was made, showed a balance due the county of $22,862.94; that it has been agreed by the receiver and the county that certain described bonds of the face value of $23,000.00 pledged by the trust company to secure the deposit will be delivered to the county and accepted by it "in full and complete satisfaction and accord of the deposit of Madison County, Texas, with the Security Trust Company of Austin, Texas."

The court's order contains the finding that the deposit of

Madison County with Security Trust Company "at this time amounts to $22,862.94," and, like the other orders, approves the contract and the application, authorizes the receiver to transfer and deliver the bonds to Madison County in absolute property and title and provides that the bonds "when accepted by Madison County shall be in full of the deposit of Madison County, Texas, with the Security Trust Company of Austin, Texas." The petition alleges that the securities were delivered to Madison County and that it disposed of them.

It is shown by the pleadings and exhibits that Madison County had but one deposit with the Security Trust Company; that before the receivership it accepted for credit against the deposit a part of the bonds that had been pledged by the trust company to secure the deposit and that during the receivership it accepted the remaining bonds pursuant to the court's order that the acceptance thereof would be in full satisfaction of the county's deposit with the trust company. In our opinion, the court's order related to the whole of the county's deposit with the trust company. It was an approval of $22,862.94 as the balance of the county's deposit. When the county accepted the last of the securities, the order released and discharged all of the claim or claims of the county arising out of the deposit as fully as if all of the securities had been delivered to the county when or after the order was entered.

Respondents' answer to the application for writ of error presents the contention that "independently of all other claims, the pleadings of plaintiffs show a cause of action in favor of Gaines County for the amount sued for." We are unable to find an assignment or point raising this question in the brief filed by appellants in the Court of Civil Appeals. We have, however, carefully considered the question and have examined those parts of the record that are relevant to it. Our conclusion is that Gaines County, like Lipscomb County and the other counties, alleges no cause of action, because it is concluded by the order of the receivership court and its acceptance of the securities in satisfaction of its claim.

■ Concho County (joined by its Road District No. 1) sues on an unsecured claim for $5,096.25 on different grounds from those alleged in support of its greater claim, which is like the claims of Lipscomb County and other counties above discussed. It is alleged that by agreement with the receiver, which was approved by order of the court on the receiver's application, Concho County agreed to accept and did accept from the receiver

the securities that had been pledged to secure its deposit with the trust company, giving therefor as a credit on its deposit $192,578.63, which left a balance of $33,975.00 still owing by the trust company to Concho County as an unsecured claim; that thereafter by agreement between the commissioners court of the county and the receiver, the county accepted $28,878.75 in full settlement of its unsecured claim for $33,975.00; that this agreement of settlement was void; and that no order was made by the receivership court authorizing or approving it.

The application for the writ of error presents the contention that this claim for $5,096.25 is barred by the order made by the court on October 2, 1939, providing that all claims not filed or presented on or before December 31, 1939, would be barred, and by the final order entered January 2, 1940, discharging the receiver and providing that the claims of all persons who had not theretofore filed verified statements thereof were forever barred. In our opinion these orders do not bar this claim, because the receiver's application and the court's order above referred to were, in effect at least, the approval of an unsecured claim in favor of Concho County for $33,975.00, and the payment of $28,878.75 was but part payment of that claim, leaving a balance of $5,096.25 due the county as an approved, unsecured claim. We hold that the petition alleges a cause of action for the recovery of this claim.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed, except in so far as they relate to the claim of Concho County and Road District No. 1, Concho County, for $5,096.25. As to that claim only, the judgment of the district court is reversed and the judgment of the Court of Civil Appeals, reversing and remanding the cause of the district court, is affirmed. One one-hundredth part of the costs in this court and in the Court of Civil Appeals and of the costs that have accrued in the trial court is taxed against petitioners, and ninety-nine-one-hundredths of the said costs are taxed against respondents.

Opinion adopted by the Supreme Court April 12, 1944.

Rehearing overruled May 24, 1944.