Oscar H. SKINNER et ux.,
Appellants,

v.

HCC CREDIT COMPANY OF ARLINGTON, INC., Appellee.

No. 17425.

Court of Civil Appeals of Texas,
Fort Worth.

June 22, 1973.

Rehearing Denied Sept. 14, 1973.

 

Cantey, Hanger, Gooch, Cravens & Munn, and Jack C. Wessler, Forth Worth, for appellants.

Irion, Cain, Magee & Davis, and Don W. Davis, Dallas, for appellee.

## OPINION

MASSEY, Chief Justice.

Plaintiff HCC Credit Company of Arlington, Inc., brought suit against defendants Oscar H. Skinner et ux. for specific performance of a lease contractual provision relative to the obligation to pay damages in the event of an action by the sovereign whereby condemnation proceedings should inhibit plaintiff's retention of leased premises for the period contracted. Thereby was additional provision for a contractual rather than a common law measure of damages.

There occurred a taking of the leased premises prior to the end of the lease period under the sovereign's right of eminent domain. Thus the provision made contingent upon such an occurrence became effective. Actually there is no question but that plaintiff is entitled to defendants' specific performance to pay damages by the contractual provision. The important question relates to the amount the defendants are obligated to pay. Appeal is from the judgment, based on jury verdict, that defendants' obligation is in the amount of $5,876.67.

We affirm.

The initial period of lease was for five years, beginning January 15, 1965; for total rental of $9,600.00, prescribed to be payable in 60 equal monthly installments of $160.00 each. There was further provision that the Lessee, who is the plaintiff, should have the right to renew the lease for another five years upon the identical terms and provisions. Plaintiff anticipated that it would exercise such option. This is obvious because there were improvements effected upon the premises by the plaintiff after entering into possession, to receive credit for which plaintiff set up an amortization plan for depreciation of its expenditure over a period of ten rather than merely five years.

The expenditure for improvements was in the amount of $10,684.83. The amortization for depreciation of the expenditure was set up by plaintiff on its books at $89.04 per month. By this plan less than one-half the cost of improvements would have been amortized at the end of the original five year lease period (60 months) from the date the lease went into effect. As a matter of fact there is no question but that only 6 months amortization of depreciation was taken in 1965. This was because the improvements were not made until about March, April and May, 1965, and payment for the improvements did not occur until about June of 1965, and depreciation was begun to be taken after that date. It is obvious that entire credit of $10,684.83, at the rate selected for amortization, would not have occurred by the end of 10 years after the date the lease became effective, for at such time there would have been remaining approximately $534.24 in undepreciated value and expenditure as applied to the improvements.

While mathematical calculation might result in a few cents difference, it is infinitesimal. For purposes of the opinion we may take the amount of $5,876.67 as the undepreciated amount of the initial expenditure (or value of improvements of 1965) as of December 31, 1969. It was this amount to which there was testimony, and the only testimony introduced; and it was this amount which the jury found in answer to Special Issue No. 1.

However, though the evidence showed what plaintiff had charged on its books as "depreciation" such testimony did not specifically prove that the deduction of depreciation which resulted in the amount of $5,876.67 constituted that portion of the cost of improvements which the plaintiff had depreciated or amortized *for tax purposes.* This constitutes a situation of which the defendants complain.

The material provisions of the lease contract, by paragraph 17, reads as follows:

"If any improvements placed on the leased premises by the Lessee are taken under or pursuant to the exercise of the right or power of eminent domain instituted against the Lessors, the Lessee shall be paid from the proceeds an amount equal to the cost of such improvements placed on said leased premises by it *after first deducting therefrom that portion of the cost which the Lessee has depreciated or amortized for tax purposes."* (Emphasis supplied.)

We exaggerate for purposes of demonstrating the question: "Could it be that the plaintiff had, *for tax purposes,* depreciated or amortized its expenditure for improvements so that on December 31, 1969, when there was condemnation it had already 'recovered' all its expenditure for improvements, or in any event a much greater amount than that to which it testified for purposes of arriving at the $5,876.67 it claims?" Though it constitutes fact of which its knowledge is exclusive plaintiff did not testify that the depreciation in its computation was *for tax purposes.* Did plaintiff's proof fall short of that required certainty in the amount of damages? Did plaintiff fail to introduce evidence of probative force and effect thereon requisite to support the verdict and judgment for $5,876.67?

In the above paragraph is to be found the position taken by defendants. Their complaint relates to the form of Special Issue No. 1 as well as to the evidence in support of it and of the jury's answer. They say that the plaintiff did not discharge its burden of proof. They cite Bittker, Federal Income, Estate and Gift Taxation, 3rd Edition, page 299, as follows:

"9. Differences between Tax Returns and Financial Statements in respect of Depreciation.

"If a business depreciates its assets for income tax purposes faster than it depreciates them in financial statements to shareholders (or, in the case of regulated industries, in financial statements prepared for rate making agencies), its 'tax return income' will be lower than its 'financial statement income' in early years, but higher in later years. For this reason, the Securities and Exchange Commission has expressed the view that if the amounts are material, investors may be misled: In the early years when 'financial statement income' is high an income tax liability is low, may become too optimistic about the company's financial position, and they will have a rude awakening in later years, when the income tax liabilities will be greater than the 'financial statement income' anticipated for those years would seem to warrant."

At the conclusion of plaintiff's main case, and before the defendants introduced testimony they dictated into the record their Motion for Instructed Verdict. Therein they made no mention of their contentions as outlined hereinabove. For the first time was the trial court apprised of defendants' theory when objection and exception was taken to the Court's Charge to the Jury. The court was so informed by way of the defendants' objection to Special Issue No. 1.

After verdict the defendants filed their Motion for Judgment in which their defensive theory was elaborated. In support thereof they filed written argument in which they presented to the court the excerpt from Bittker's text heretofore copied.

Until such time no authority seems to have been presented to the trial court. At

no time did defendants tender evidence, or make an offer to tender evidence, tending to contradict the conclusion of the court, evidenced in the language of Special Issue No. 1, that the issue was raised by plaintiff's testimony.

Special Issue No. 1 read as follows:

"What amount of money, if any, do you find from a preponderance of the evidence was the undepreciated amount on December 31, 1969, of the original cost of improvements made by plaintiff, through Thomas S. Byrne, Inc., on the leased premises in question?" As previously noted the answer thereto returned by the jury was $5,876.67.

Our conclusion is that the trial court in a proper exercise of its discretion took judicial notice that the evidence on depreciation had relation to and embraced or was the same as depreciation for tax purposes, that submission of the question to the jury by Special Issue No. 1 was proper, and that by the jury's answer thereto would be found such depreciation (by necessary implication) as would be determinative of the amount, if any, of plaintiff's entitlement. The trial court took such to have that evidentiary significance as matter of fact without proof of the fact.

Under these circumstances the defendants, as parties aggrieved, were entitled to object and to introduce evidence tending to contradict such conclusion of the court. But there was no objection on the ground that the conclusion was not justifiable. Neither party demanded that the other be obliged to introduce evidence, or himself afforded opportunity to introduce evidence, that the subject matter either was or was not such that the court was at liberty to treat as judicially noticed.

▪ The rule of judicial notice is founded on expediency and convenience adopted to save time in the trial of controversies. It rests largely within the discretion of the trial court as to what those facts may be

of which it will take judicial notice. Indeed, the test to be made in any instance of complaint is whether there has been an abuse of discretion, or absence of any right to exercise discretion, in relation to that because of which a party deems himself aggrieved. State v. Arkansas Fuel Oil Co., 268 S.W.2d 311, 320 (Austin Civ.App., 1954, reversed on other grounds at 154 Tex. 573, 280 S.W.2d 723). In such opinion many recognized authorities are reviewed on the matter of scope and exercise of judicial knowledge in the area of judicial notice.

We hold that there was present in the circumstances a right of the trial court to exercise judicial discretion, and we perceive no abuse of discretion, in treating the evidence as having raised the issue in answer to which the jury's answer would establish the correct amount of depreciation.

▪ It is in a rare instance that depreciation of property values is not used primarily for tax purposes, though there may be other additional purposes to which the same depreciation may be intended to have application as well. Without advance notice by a litigant, such as one in the position of the defendants in the instant case, to the effect that he will challenge proof of depreciation if not qualified by the showing that it has been for tax purposes, we do not doubt the right of the trial court to take judicial notice that by evidence thereof depreciation for tax purposes is shown. Here the defendants were aware in advance of trial that in all reasonable probability the evidence of depreciation would not specifically show that it was for tax purposes. That is so because the evidence whereby it would be shown was from a witness in a foreign state, of whose testimony defendants were apprised in advance since it was contained in such witness' deposition. Matter such as this was proper to be taken into consideration by the trial court in the determination of whether it would or not take the material judicial notice.

**712**

Our holding is one as to which we find no precedent. Authorities to which we have had resort in our decision of the question include 23 Tex.Jur.2d, p. 27, "Evidence", Sec. 10, "(Judicial Notice) In general; Definitions", and Sec. 52 (at p. 86) "Customs and usages"; 29 Am.Jur.2d, p. 58, "Evidence", Sec. 20, "Reception of evidence to contradict or rebut matters judicially noticed"; 31 C.J.S. Evidence § 13, "Use and Function"; (on p. 842) c. "Suggestion or Presentation of Fact"; (on p. 843) d. "Caution and Discretion in Use"; and (on p. 844) e. "Doctrine of Judicial Notice Inverted"; 31 C.J.S. Evidence p. 1054 to 1058, inclusive, § 54, "(Government and its administration)— Revenue and Taxation".

In our investigation relative to the matter of the attack on plaintiff's evidence which defendants were at liberty to counter it is to be observed that by their general denial they were at liberty to introduce any such they might have had under the theory of mitigation of damages. Already noticed was the fact that defendants did not attempt to avail themselves of any evidence.

That defendants did not so attempt to avail themselves of evidence also has relation to another contention which, in essence, is as follows: since by contract of the parties the amount to which plaintiff lessee would be entitled in the event of condemnation proceedings should be payable out of the amount defendants should receive pursuant thereto; and since plaintiff's proof failed to show that the amount so received for the particular part of the condemned area and parcel of property on which the building containing the leased premises was located, there having been adjacent area and property of the defendants embraced in the condemnation and for which two properties a total amount was paid by the sovereign without segregation and separate apportionment to each, defendants contend plaintiff to have failed to discharge its burden of proof.

We overrule the point and contention. In the absence of assertion and proof to the contrary it will be presumed that a condemning authority paid value for property it has taken. And, under circumstances such as those in the instant case the trial court would be entitled to take judicial notice that the improvements made to the condemned premises had enhanced its value to the full amount of the cost therefor. That the court did so will be presumed. Such action by the court was not an abuse of discretion. The point of error is overruled.

Other respect of complaint is defendants' contention that there was error in the verdict and judgment based thereon. The contention was that the special issues did not properly incorporate the elements of the plaintiff's cause of action, in particular since plaintiff had failed to show the amount of improvements placed on the property actually taken pursuant to condemnation proceedings (because some of it constituted personal property not condemned); because there could be no proper jury finding without severing and excluding the value of property not condemned and taken under an instruction by the court, and because there could be no jury finding supported by evidence in that the evidence did not supply a means enabling severance and exclusion.

The state of the evidence is such as to demonstrate absence of merit in defendants' complaint. On the material issue the jury found that new heating and air conditioning cost was not included as among the improvements because of which plaintiff had brought suit. More fundamental, however, is the fact that by response to Requests for Admissions of Fact the defendants had admitted that all improvements, the cost of which was material to plaintiff's cause of action, had been taken by the sovereign pursuant to condemnation. The point of error is overruled.

Judgment is affirmed.