HOUSTON CHRONICLE PUBLISHING COMPANY & Cox Enterprises, Inc. d/b/a Austin American-Statesman, Relators,

v.

The Honorable G.P. HARDY, Jr., District Judge, 130th District Court, Matagorda County, Texas, Serving by Special Appointment, Respondent,

CITY OF AUSTIN, Relator,

v.

The Honorable G.P. HARDY, Jr., District Judge, 130th District Court, Matagorda County, Texas, Serving by Special Appointment, Respondent,

CITY OF SAN ANTONIO, Texas, Acting By and Through the CITY PUBLIC SERVICE BOARD OF the CITY OF SAN ANTONIO, Texas, Relator,

v.

The Honorable G.P. HARDY, Jr., District Judge, 130th Judicial Court, Matagorda County, Texas, Serving by Special Appointment, Respondent.

Nos. 13–83–544–CV, 13–84–015–CV and 13–84–016–CV.

Court of Appeals of Texas, Corpus Christi.

April 12, 1984.

Rehearing Denied May 10, 1984.

W. Robert Brown, Richard L. Tate, Liddell, Sapp, Zivley, Brown & LaBoon, Houston, for relator (Houston Chronicle).

David H. Donaldson, Jr., Graves, Dougherty, Hearon & Moody, Austin, for relator (Cox Enter.).

G.P. Hardy, Jr., Wanda Roberts, Bay City, for respondent.

Thomas J. Heiden, Richard A. Gaffin, Miller, Canfield, Paddock and Stone, Grand Rapids, Mich., William Vernon, Fulbright & Jaworski, Houston, Tex., Jonathan Davis, Acting City Atty., City of Austin, Austin, Tex., for relator, City of Austin.

Ferd C. Meyer, Jr., Raul M. Calderon, Jon C. Wood, Charles J. Fitzpatrick, Matthews & Branscomb, San Antonio, Tex., for relator, City of San Antonio; B. Allen Cumbie, Charles Martinez, III, Bay City, Tex., of counsel.

W. James Kronzer, Houston, for real party in interest, The Halliburton Company.

Harry M. Reasoner, Page I. Austin, and Charles W. Schwartz, Vinson & Elkins, Houston, for real party in interest, Brown & Root, Inc.

Before NYE, C.J., and UTTER and KEITH,[1] JJ.

## OPINION

KEITH, Justice (Retired).

Our original jurisdiction has been invoked in three separate proceedings wherein each relator seeks the writ of mandamus to compel the Honorable G.P. Hardy, Jr., the District Judge of the 130th District Court of Matagorda County, serving by special appointment, to permit public dissemination of pretrial discovery material in depositions taken by the parties in a suit now pending, untried, in said court.

### THE BACKGROUND

The underlying suit now pending before Judge Hardy is No. 81–H–0686–C, entitled Houston Lighting & Power Co., Individually and as Project Manager under the South Texas Project Agreement between the City of San Antonio, Texas, Central Power & Light Co., Houston Lighting & Power Co., and the City of Austin, Texas, executed as of July 1, 1973, as amended, et al. vs. Brown & Root, Inc., and The Halliburton

---

1. Associate Justice, Court of Appeals, Ninth Supreme Judicial District (Ret.), sitting by designation. See, *Art. 1812,* as amended.

Company, pending in the 130th District Court of Matagorda County, Texas.

Our *moving parties* are: (1) The Houston Chronicle, a newspaper published in Houston, Texas, with a wide circulation throughout South Texas; (2) Cox Broadcasting Co., Inc., publisher of the Austin, American-Statesman, newspapers with wide circulation in and near the City of Austin, Texas; (3) City of San Antonio, Texas, one of the participants in the construction contract with Brown & Root, Inc. involved in their litigation; and (4) City of Austin, Texas, also a participant in the construction contract with Brown & Root, Inc. and involved in their litigation.

The *real parties in interest* in this action are: (1) Brown & Root, Inc. (hereinafter B & R), a defendant in the litigation; (2) The Halliburton Company, also a defendant in the litigation, the owner of all of the corporate stock of B & R; and (3) Houston Lighting & Power Co. (hereinafter HL & P), plaintiff in the litigation.

*The underlying litigation.* The suit now in the pretrial stages in the District Court of Matagorda County, where it is generally known as the "South Texas Nuclear Project Litigation" which is a suit brought by the plaintiff HL & P against B & R and Halliburton for the alleged breach of defendants' obligations as architect, engineer, construction manager and constructor of the nuclear generation station known as the South Texas Nuclear Project. The plaintiffs in amended pleadings make serious and substantial allegations of breaches of defendants' obligations to provide engineering expertise and quality assurance in the engineering and construction of the project; misrepresentations of engineering experience devoted to the project; mismanagement of design, engineering and construction; failure to complete the project in a timely fashion, resulting in cost overruns and abandonment of the project. Plaintiff's allegations and the defendants' responses raise serious and substantial implications, not only for the financial well-being of the parties to the litigation, but also because they involve issues of major public

importance and significance for the economic welfare of the readers of the newspapers who are also electric rate payers of HL & P and of the two cities named above.

We are advised by counsel for B & R that Judge Hardy, now retired, had presided over the same trial court for some 35 years and is now sitting by special assignment. Counsel states that the suit was originally filed on December 16, 1981, and has already resulted

> "in a record of 1,419 pages of pretrial hearings and some 498 pleadings and briefs comprising thousands of pages. Some 19,700 pages of deposition transcripts have been received, and the parties collectively have stated that they need to take, at least, another 250 depositions. Defendants have produced some 23.6 million pages of documents and plaintiffs have produced some 3 million pages. To visualize the magnitude of the production, if copies of the documents were stacked, the pile would be 1⅔ miles high. Substantial document production remains to be completed."

[Reasoner Brief, filed 1/27/84.]

### THE ORDER SUMMARIZED

We attach hereto as an appendix, a copy of the order now attacked in these proceedings and now summarize the order which:

(1) Requires the attorneys for the parties to honor the provisions of the Texas Code of Professional Responsibility governing comments to the media in civil cases;

(2) Requires the parties, their attorneys and assistants to refrain from disclosing to third parties information obtained through the Court's discovery processes; and

(3) Seals the depositions, interrogatory answers and other documents that are obtained in discovery and may be offered in evidence.

The order also provides that:

(4) There shall be no limitation on access to hearings and evidence offered therein;

(5) There shall be no limitation on the media's right to publish information it has obtained or may obtain from other sources;

(6) There is no limitation on the attorneys' right to communicate with their clients; and

(7) The Court offers to entertain reasonable requests to modify the order in the future.

The Court finds that the town where the court sits is in close proximity to the nuclear project and that the issues are unusually emotional.

The Order recites that the complexity of the suit and the enormous number of documents involved, which, if selectively disclosed to third parties by the parties or their attorneys, could present materially false impressions as to the merits of the claims and their likelihood of success and interfere with the right to a fair trial to which all parties aspire. Upon the basis of such recitations as shown by the order itself, the trial court ordered the attorneys to refrain from making any comments to the media in this cause and, specifically, that all attorneys shall refrain from making extrajudicial statements which constitute "opinion as to the merits of the claim or defenses of a party" or which are "reasonably likely to interfere with the fair trial of the action."

All parties, attorneys, experts, etc. employed by the parties, court reporters, clerks and officers of the court shall likewise refrain from disclosing to third parties information obtained through the court's discovery processes.

All depositions, interrogatories and answers thereto, requests for admissions and answers thereto and all other documents shall be filed under seal and shall be opened only by order of the court.

Paragraph 4 of the Order reads:

"If the Court determines that any party's right to a fair trial has been jeopardized by a violation of this Order, it may take appropriate action, including but not limited to dismissing the claim for relief of any party found in violation of the Order, or ruling that any document released to the press shall be inadmissible at the trial."

Finally, the court ordered that reasonable requests to modify the closure order would be considered as the need arises in the future.

■ The 1983 amendment to TEX.REV. CIV.STAT., Art. 1824, expanded our original jurisdiction in mandamus actions. It specifically provides that such writs shall issue "agreeable to the principles of law regulating such writs." [2] One of the fundamental rules governing mandamus proceedings is that the Court will not review the exercise of discretionary authority by the judge of a court or other officer. *Terrell v. Greene*, 88 Tex. 539, 31 S.W. 631, 634 (1895). However, "the writ may issue in a proper case to correct a clear abuse of discretion." *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 440 (1959).

Movants have indeed chosen the hard road in seeking the writ of mandamus in this case. As noted by the Court in *Fisher v. Continental Illinois Bank & Trust Co.*, 424 S.W.2d 664, 670 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.):

"By the very nature of things, [motions for the protection of parties and witnesses ...] must be addressed to the sound discretion of the trial court."

See also the comments in *Meyer v. Tunks*, 360 S.W.2d 518 (Tex.1962).

## THE NEWSPAPERS' CONTENTIONS

The Houston Chronicle argues, mistakenly, that Judge Hardy's order denied *access* to the proceedings in violation of its First Amendment rights. It continues its argument, this time correctly, that "a number of state courts have considered the question of whether the right of the public and press to attend *criminal* trial proceedings applies to pretrial proceedings (emphasis supplied) ..." But, counsel cites not a single case, state or federal, which holds

---

**2.** Vernon's Texas Session Law Service, 1983, p. 4769.

directly that raw pretrial depositions, taken in a civil case, which have never been offered in evidence upon a future trial is subject to access, as a matter of right, to the news media. Upon oral submission, all counsel agreed that they knew of no such case; and, considering the caliber of counsel, the reputation statewide which they enjoy, and our independent research, we must accept such statement as a fact. Chief Justice Burger, concurring in *Gannett Co. v. DePasquale*, 443 U.S. 368, 396–397, 99 S.Ct. 2898, 2913–2915, 61 L.Ed.2d 608 (1979), articulated his disagreement with such a contention in this language:

> "[D]uring the last 40 years in which the pretrial processes have been enormously expanded, it has never occurred to anyone, so far as I am aware, that a pretrial deposition or pretrial interrogatories were other than *wholly private to the litigants*. A pretrial deposition does not become a part of a 'trial' until and unless the contents of the deposition are offered in evidence . . .
>
> For me, the essence of all of this is that by definition 'pretrial proceedings' are exactly that." (Emphasis supplied.)

Justice Stewart, speaking for the majority in *Gannett Co. v. DePasquale*, supra, noted that the press had no privilege for the reporting of pretrial proceedings under English Common Law. He noted that in the cited case that: "the court forbade the dissemination of information about a pretrial hearing to protect the right of the accused to receive a fair trial." This was one of the assigned reasons for the entry of Judge Hardy's order now under attack.

And, it should never be forgotten that *DePasquale* was a criminal case, and the order simply prohibited publication of information which came out in a pretrial suppression hearing during a murder trial.

In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the press sought access to Ex-President Nixon's tapes which had been offered in evidence at trial. The movant sought access so that it could copy and broadcast the tapes. The Court held that the press had no First Amendment right of access to the tapes, using this significant language:

> "The First Amendment generally grants the press no right to information about a trial superior to that of the general public. 'Once beyond the confines of the courthouse, a newsgathering agency may publicize, within limits, what its representatives have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the general public.' "

Counsel for the newspapers have cited many authoritative cases holding generally that the press has a right of access to trials. That question is not before us. The order entered by Judge Hardy does not close the courthouse or any part of the actual trial of the cause. Media representatives have only been denied *their claimed* right to root through a tremendous pile of undigested documentary evidence assembled during pretrial discovery proceedings by Judge Hardy's order. This restriction has only been done, after a hearing and then for perfectly legitimate reasons, one of which is paramount, and that is to afford the litigants a fair trial of the trial issues presented in the case.

The newspapers have cited an imposing list of criminal cases which have denied access to the trial itself. Such citations are not helpful nor germane to the decision of the case at bar. For instance, it is asserted that "the constitutional right of access afforded the public and press under the First Amendment established by the Supreme Court in *Richmond* and *Globe*[3] clearly applies to pretrial proceedings as well as trials." *United States v. Chagra*, 701 F.2d 354 (5th Cir.1983). *Chagra* was indicted for several offenses, including conspiracy to murder Federal Judge John Wood. The

---

**3.** *Richmond Newspapers v. Commonwealth of Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), and *Globe Newspaper Company v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), respectively.

U.S. Magistrate closed the proceedings in a bond reduction hearing so as to prevent publication of a statement which Chagra asserted was an inadmissible part of a plea bargain and would likely prevent his being afforded a fair trial. We hold that *Chagra* bears no factual similarity to the case at bar and does not support movants' claims for relief.

Two decisions by the Texas Court of Criminal Appeals cited to us suffer the same infirmity and lack of precedential value:

(1) *Houston Chronicle Publishing Co. v. McMaster,* 598 S.W.2d 864 (Tex.Crim. App.1980). The action was precipitated when the respondent Judge closed to the public a hearing he was then conducting in post conviction habeas corpus proceedings. There, the convicted murderer was contending that he had received ineffective assistance of counsel during his trial because his lawyer was having an affair with the defendant's wife during the trial. The hearing was in a criminal matter which had already been tried, and the holding was predicated upon Article 1.24, V.A.C.C.P., which requires all proceedings and trials of criminal cases to be public. The result is not persuasive when compared to the case at bar.

(2) The case of *Houston Chronicle Publishing Co. v. Shaver,* 630 S.W.2d 927 (Tex. Crim.App.1982) arose when the trial court was conducting a *Jackson v. Denno*[4] suppression hearing and closed the hearing to the public and news reporters. This, too, arose out of a criminal proceeding and is not helpful in our analysis of the claim for relief.

Similarly, citation of *Associated Press v. United States,* 705 F.2d 1143 (9th Cir.1983) also falls far short of the mark. That was a case arising out of the well-known DeLorean criminal prosecution and involved

criminal pretrial proceedings—not pretrial civil proceedings.

Judge Hardy did not rely upon his inherent powers. He had the judicial power and authority that was explicitly granted by TEX.R.CIV.P., Rule 186b. This rule bears a marked resemblance to FED.R.CIV.P., Rule 26(c) which is mentioned frequently in the federal decisions on the subject. A similar state court rule in Washington State was considered by the Washington Supreme Court in *Rhinehart v. Seattle Times Co.,* 98 Wash.2d 226, 654 P.2d 673 (Wash:Sup.Ct.1982) cert. Gr., —— U.S. ——, 104 S.Ct. 64, 78 L.Ed.2d 80 (1983).[5]

■ We find no merit to the contentions advanced by the newspapers that Judge Hardy's protective order constituted an impermissible prior restraint upon any rights of the moving parties. Accordingly, all relief sought upon such theory is here denied.

Before turning to the contentions of the cities, we note that on at least one occasion, the Texas Supreme Court declined to consider a similar question. It was presented by Cox Enterprises, Inc., d/b/a the Lufkin News. An interesting account of this case is to be found in *Murray v. Leach,* 535 F.Supp. 765, 768–769 (D.C.E.D.Tex.1981).

We have given careful consideration to all of the contentions advanced by the newspapers, although we may not have written specifically on each argument advanced. However, we find no merit in any of the contentions. As such, each is therefore overruled. The relief sought by each of the newspapers is denied, and Judge Hardy's order will remain undisturbed.

## THE ARGUMENT OF THE CITY OF AUSTIN AND THE CITY OF SAN ANTONIO

At the outset of our discussion of the contentions of the two cities, we note that

---

**4.** *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**5.** The holding in *Rhinehart* is summarized in 51 L.W. 2348 (12/14/82), and the Court came to the conclusion that a protective order prohibiting the newspaper defendant in a libel action from publishing any information obtained

through discovery was not unconstitutional prior restraint. *Rhinehart* was scheduled for submission in the United States Supreme Court for the week of February 21, 1984, while this cause is under consideration by this court. See 52 L.W. 3579, 2/14/84.

each city is involved in the litigation in its proprietary capacity as the operator of its electric generation and distribution system. *See City of Greenville v. Pitts*, 102 Tex. 1, 107 S.W. 50, 51 (1908). On the other hand, many discretionary functions exercised by cities are governmental in nature. See, e.g., police power, *Tyler v. Ingram*, 139 Tex. 600, 164 S.W.2d 516, 519 (1942).

■ It should be remembered, at the outset, that each city voluntarily joined in this litigation seeking affirmative relief. Municipalities are mere creatures and subdivisions of the State, *Security Trust Co. v. Lipscomb County*, 142 Tex. 572, 180 S.W.2d 151, 159 (1944). Consequently, the cities are bound by the same rules that govern the State when it appears as a party in a judicial proceeding; it occupies the same position as any other litigant. This is language which was used in the old case of *State v. Cloudt*, 84 S.W. 415, 416 (Tex.Civ.App.—San Antonio 1904, writ ref'd):

> "When a state appears as a party to a suit, she voluntarily casts off the robes of her sovereignty, and stands before the bar of a court of her own creation in the same attitude as an individual litigant; and *her rights are determined and fixed by the same principles of law and equity,* and a judgment for or against her must be given the same effect as would have been given it had it been rendered in a case between private individuals." [Emphasis added.]

This language was quoted by the Supreme Court in *Wortham v. Walker*, 133 Tex. 255, 128 S.W.2d 1138, 1145–6 (1949). *See also Anderson, Clayton & Co. v. State*, 122 Tex. 530, 62 S.W.2d 107, 110 (Tex.Com.App.1933, opinion adopted).

Relator Austin initially sets forth the following four reasons in support of their contention that the protective order issued by Respondent is inappropriate and should be set aside:

(1) Defendants (Brown & Root, Inc., and the Halliburton Co.) have waived the right to seek such a protective order (i.e., defendants have brought publicity to the suit through media, and cannot now claim their rights to a fair trial will be infringed without a protective order);

(2) the order interferes with the ability and right of Austin to prepare for trial;

(3) the order interferes with Austin's constitutional and common-law rights respecting its right to know of and comment on the lawsuit since it prevents city officials from communicating with the citizenry; and

(4) the order is inconsistent with other acts and proceedings which require disclosure of the materials subject to the protective order (i.e., the order interferes with Austin's officials' lawful exercise of governmental functions).

Austin's foremost argument in opposition to the protective order is that the First Amendment rights to free speech of its public officials have been impermissibly interfered with, such that the order operates as a "prior restraint." Austin contends the order effectively bars "parties," such as Austin, from communicating with "third parties," such as the residents of Austin, about *any*. discovery material connected with the instant lawsuit. Austin further contends that the "chilling effect" of the order on the First Amendment rights of its public officials will deprive its citizenry of information necessary to make informed decisions with respect to future funding for the project, the ultimate disposition of the case, and the independent judgment of the citizenry as to the reasons for and the persons/events responsible for the city's present situation.

Relator San Antonio asserts similar contentions to those of Relator Austin and expressly adopts Austin's arguments as to the defendant's waiver of any right to seek a protective order. Most notably, San Antonio asserts that the order operates as an unlawful "prior restraint" upon the parties' constitutionally protected rights to freely discuss information they lawfully possess through discovery in the South Texas Project litigation. Secondly, San Antonio opposed defendants' Motion for Protective Order prior to and subsequent to the is-

suance of the order for the reason that defendants did not establish "good cause" to warrant granting their motion in order to protect defendants' right to a fair trial. Finally, San Antonio attacks that portion of the order in which the Court took judicial notice of certain matters for the reasons that the matters judicially noted in the order were not proper subjects for judicial notice under Tex.R.Evid. 201; and defendants did not provide sufficient, if any, evidence to support these conclusions.

Defendants, Brown & Root, Inc., and the Halliburton Company, initially submit that relators' attacks on the order are premature. Defendants contend that until Austin and San Antonio have a genuine need to release a specific document subject to the order and Judge Hardy declines to release it, relators have not been harmed. In response to the various arguments of relators, defendants answer briefly the following:

(1) There is no inhibition under the Texas or United States Constitutions or Texas law to subjecting municipal corporations to the protective order entered here (i.e., as litigants in proceedings such as these cities are municipal corporations with no special rights);

(2) Judge Hardy's order was not an abuse of discretion but was entered with good cause based on proper findings;

(3) Relators' claims that Brown & Root and Halliburton have been improperly attempting to frustrate discovery and conceal facts are both patently irrelevant to the issues before this Court and are patently false.

Notwithstanding relators' waiver argument, Relator Austin contends that the present proceeding primarily revolves around a narrow constitutional question: a party's sixth amendment right to a fair trial (i.e., the right to select an impartial jury) versus a party's right to free speech (i.e., free of prior restraints) as protected by the First and Fourteenth Amendments to the U.S. Constitution and Article I, section 8 of the Texas Constitution. More specifically, the underlying issue proposed

to this Court turns on a party's First Amendment interest in disseminating information obtained through discovery.

Austin and San Antonio rely extensively on the majority opinion of *In Re Halkin*, 598 F.2d 176 (D.C.Cir.1979) in support of their contention that the First Amendment rights of their respective public officials, as representatives of the people of Austin and San Antonio, attach to materials made available through discovery. Relators further adopt the position of the *Halkin* Court that, since the First Amendment rights of a party to civil litigation extend to information obtained through discovery, any "prior restraint" on the speech of a party entered under the guise of a protective order restricting dissemination of discovery material must meet *stringent* First Amendment criteria. *Id.* at 190–91.

In *Halkin*, the principal defendant was the United States government, sued by a number of individuals for invasion of their Constitutional rights through unlawful surveillance, occasioned by their opposition to the Viet Nam war. There was no question but that the matters threatened to be released were of public importance, as well as public interest. The District Court signed defendant's proposed order, pursuant to Fed.R.Civ.P. 26(c), restraining the parties and their counsel from publicly disclosing information obtained through discovery. *Id.* at 182. Plaintiffs petitioned the D.C. District Court of Appeals for a writ of mandamus to vacate the District Court's order on the basis that the order constituted an invalid "prior restraint" of expression and the order lacked the "good cause" required by Fed.R.Civ.P. 26(c). *Id.* The majority, following a lengthy analysis of the "First Amendment and the Discovery Process," concluded the following:

"Judged by the standards imposed by Rule 26(c) and the First Amendment, the district court's order is indisputably deficient. *It prohibits political expression, yet it is silent as to its reasons, rests on no express findings, and is unsupported by any evidence. Id.* at 197.

The *Halkin* Court further determined that mandamus was appropriate in that case, particularly because plaintiffs had "no other available adequate remedy." *Id.* at 198–99. The *Halkin* Court did not issue the writ at that time, but transmitted a copy of the opinion to the District Court to "permit further proceedings in light of the discussion herein." *Id.* at 200.

The *Halkin* Court noted that a judicial order pursuant to Rule 26(c) limiting lawyers' and parties' expression does possess many of the characteristics of an administrative licensing scheme; the traditional "prior restraint." *Id.* at 183. The Court went on to distinguish an order properly issued under Rule 26(c) from an administrative censorship scheme in stating that "such an order need not present the same dangers as many delegations of authority to an administrative censor, nor the same threat to expression generated by other judicial orders previously condemned as prior restraints." *Id.* at 184–85 (footnote nos. 16, 17).

Contrary to relator's assertion, the *Halkin* court was careful to point out that it did not categorize the protective order involved in that case as a "prior restraint":

> [W]e do not believe, however, that the proper resolution of this case in the end turns on whether this order can be termed a prior restraint. We observe the admonition of Justice Frankfurter that the term "prior restraint" should not be used as "a talismanic test," *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 441, 77 S.Ct. 1325 [1328, 1 L.Ed.2d 1469] (1957), and do not begin our examination with an almost insurmountable presumption against the validity of this order. *However, the fact that the order poses many of the dangers of a prior restraint is sufficient to require close scrutiny of its impact on protected First Amendment expression. Id.* at 186.

In discussing the First Amendment interests of litigants and lawyers, the *Halkin* court recognized that litigation itself is a form of expression protected by the First Amendment. The Court favored the language of a recent Supreme Court case which stressed that litigation may be "a vehicle for effective political expression and association, as well as a means of communicating useful information to the public." *Id.* at 187 (citing *In re Primus*, 436 U.S. 412, 431, 98 S.Ct. 1893, 1904, 56 L.Ed.2d 417 [1978]). The majority reasoned that because the courts have concluded that lawyers and parties retain their First Amendment rights even as participants in the judicial process, those rights extend to discovery materials. *Id.*

■ Next, the Court examined the extent of the First Amendment interest in discovery materials. Generally speaking, when a party obtains documents or information through the discovery process, he can "use that information in any way which the law permits." *Leonia Amusement Corp. v. Loew's, Inc.*, 18 F.R.D. 503, 508 (S.D.W.Y.1955); *accord Essex Wire Corp. v. Eastern Electric Sales Co.*, 48 F.R.D. 308, 312 (E.D.Pa.1969). Under Rule 26(c), Fed.R.Civ.P., the party or person from whom discovery is sought must establish "good cause" for any restriction on the use of discovery documents. The *Halkin* Court held that, under the federal rules, the implication is clear that without a protective order, materials obtained in discovery may be used by a party for any purpose, including dissemination to the public. 598 F.2d at 188.

The *Halkin* Court concluded that a restriction on what parties may say about information *once they have obtained it* directly implicates the First Amendment. *Id.* at 190. The conclusion that First Amendment rights attach to materials made available through the discovery process did not, however, end their inquiry. The court acknowledged that the First Amendment is not an absolute, *see Near v. Minnesota*, 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931), and the protection afforded the exercise of First Amendment rights may be limited in certain narrow circumstances. *Id.* Protection of a subordinating public interest may justify

*narrowly drawn* restrictions of First Amendment rights. The majority determined that the appropriate constitutional standard governing the issuance of restraining orders under Rule 26(c) must take account of the important public interests in the functioning of the discovery process, and the unique characteristics of that process, as well as the First Amendment interest in unfettered expression. *Id.* at 191. The Court then proceeded to an examination of the constitutional standard which the trial judge "must" apply before entering a protective order under Rule 26(c), which will be discussed hereinafter.

A second case recognizing the potential conflict between First Amendment interests and judicial protective orders under Rule 26(c) is *In Re San Juan Star,* 662 F.2d 108 (1st Cir.1981). The *San Juan Star* case involved a federal civil rights action brought by relatives of two suspected terrorists that were killed in a shootout with police officers in Puerto Rico. The relatives alleged in their suit that police officers, senior law enforcement officials and the government of Puerto Rico had conspired to arrange the killings. That suit, which also called into question the validity of two earlier Justice Department reports exonerating the defendants, stirred enormous interest and publicity in Puerto Rico. Media coverage of the developing litigation had been intense, with defendants' deposition testimony reported, together with explanations provided by both sides, virtually at the time it was given.

In response to the publicity, the district court issued several orders. The second order prohibited attorneys from disclosing all evidence obtained through *subsequent depositions to the press, to the litigants themselves, or to any third party.* 662 F.2d at 111. Emphasizing that all information would become public once trial began, the court described its order as a protective order governing the taking of depositions under Fed.R.Civ.P. 26(c), with the requisite "good cause" found in a "reasonable likelihood" that the wide dissemination of prejudicial publicity would otherwise deny the defendants a fair trial. *Id.* It is important to note that the parties objecting to a protective order in *San Juan Star* were not litigants, but rather were members of the media who desired to obtain information from attorneys subject to such an order.

On review, the First Circuit held that significant but limited First Amendment concerns are implicated by a protective order restricting the dissemination of information obtained through court-ordered depositions. *Id.* at 114. The *San Juan Star* Court began their inquiry with the undisputed fact that a court under Rule 26(c)(1) can deny access to information altogether by preventing discovery upon a showing of any "good cause." *Id.* The Court proceeded to explain that it did not consider "undigested matter, forced from the mouth of an unwilling deponent" to be encompassed within a broad public "right to know." *Id.* at 115. The Court further stated that the prior restraint standard of *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683 (1976), a case principally relied on by relator San Antonio, did not apply:

> "Our next step is to recognize the relevant but not determinative fact that litigants, their attorneys, and the press would have a strong interest in being able to convey and receive truthful reports of *public* criminal and civil judicial proceedings, see *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 595–96, 100 S.Ct. 2814, 2838–39, 65 L.Ed.2d 973 (1980) (Brennan, J., concurring in the judgment), and that restraints on the transfer of newsworthy information of this nature would be subject to the highest degree of protection. See *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683 (1976). *When information is produced during civil discovery, however, the First Amendment interests and consequently the degree of severity of our scrutiny of the restraints are different."* 662 F.2d at 114 (emphasis supplied).

The *San Juan Star* Court (1st Cir.1981) continued with the following language, to

which defendants Brown & Root, Inc., and Halliburton Co. cite repeatedly:

"Such undigested matter, forced from the mouth of an unwilling deponent, is hardly material encompassed within a broad public 'right to know.' Its disclosure would not advance the informed civic and political discussion that the First Amendment is intended to protect. We do not see present in the case of civil discovery those interests that make publicity in a criminal trial an important 'safeguard against any attempt to employ our courts as instruments of persecution,' *In re Oliver,* 333 U.S. 257, 279, 68 S.Ct. 499, 510, 92 L.Ed. 682 (1948). *Nor can the discovery processes lay claim to the long tradition of openness enjoyed by criminal or civil trials.* Compare *Richmond Newspapers, Inc. v. Virginia,* supra, 448 U.S. at 564–69, 100 S.Ct. at 2821–23 (opinion of Burger, C.J.). 622 F.2d at 115 (emphasis supplied)."

The 1st Cir. Court concluded that, although there is a First Amendment interest in information produced at trial that warrants full protection, a judicially-powered process compelling information that has not yet passed through the adversary-judicial filter for testing admissibility does not create communications that deserve full protection.

The communications produced during discovery are not totally undeserving of protection under the First Amendment. Accordingly, the *San Juan Star* Court decided to scrutinize the restraints imposed by protective orders under a less severe standard than that ordinarily applied to prior restraints. The Court characterized its standard as one "of 'good cause' that incorporates a 'heightened sensitivity' to the First Amendment concerns at stake," a position midway between those taken in the majority and dissenting opinions in *Halkin. Id.* at 116.

We now turn to the plaintiffs' appeal of that part of the same order that prohibited disclosure of deposition material by plaintiffs' counsel to their clients, i.e., plaintiffs themselves. The Court found it to be clearly invalid and reversed that portion of the district court's order. *Id.* at 118. The order issued by respondent in the South Texas Project litigation is not the same as that issued in the *San Juan Star* case. Admittedly, by all parties the present order does not prohibit any attorney from communicating with his clients or prospective witnesses concerning discovery materials. Rather, the order is intended to thereafter "seal the lips" of those prospective witnesses and parties to prevent them from discussing such material with third parties outside the case.

Respondent Judge Hardy, as well as the defendants herein, refer this Court to the recent D.C. Circuit case of *Tavoulareas v. The Washington Post Co.,* 724 F.2d 1010 (D.C.Cir.1984), in support of the subject protective order entered by Judge Hardy. In that case, Mobil Oil Corp., the intervening party moving for a protective order to secure the *confidentiality of commercial information* sought by the Post, was seeking reversal of the portion of a district court order that unsealed 3800 pages of deposition transcripts and 425 exhibits. These documents were initially designated confidential by Mobil pursuant to a "blanket" protective order. Mobil contested only the disclosure of those documents *"not used at trial"*; i.e., those never submitted into evidence, read into the record, or submitted in support of a pretrial motion.

The *Tavoulareas* Court said:

After full consideration, we disagree with the district court's conclusion that Mobil's showing was insufficient *to justify continued confidentiality* of those depositions never used at trial. Our decision follows from a different view of the relevant statutory and constitutional interests from that of the district court. While we acknowledge that discovery is presumptively open under the Federal Rules of Civil Procedure, we believe that statutory, common law, and constitutional privacy interests require protecting the confidentiality of Mobil's sensitive

commercial information. *Public dissemination of confidential discovery materials not used at trial cannot be justified by a common law or constitutional right of access or by a first amendment right of free speech or free press.* (Emphasis supplied.)

In this respect, Respondent contends that the constitutional right of access only applies to materials upon which a judicial decision is based, unlike the pretrial depositions filed pursuant to the South Texas Project litigation. Relator Austin replied to this contention during oral argument by stating that they are not arguing a constitutional or common law right of access to discovery materials because, as a party, "we already have access to that information."

In *Tavoulareas*, following a lengthy discussion of the privacy interests that will overcome the Federal rules' "presumption of openness," the Court proceeded with a First Amendment free expression analysis. The *Tavoulareas* Court appeared to reject the majority's opinion in *In re Halkin*, 598 F.2d 176 (D.C.Cir.1979), in that they denied that the source of information can affect the free expression interest of the speaker:

> In the discovery context, the government is in a very real sense the direct source of discovered materials since those materials are made available only through the compulsory processes of the court. *A litigant's interest in disseminating information obtained through the court's processes consequently is not unfettered. Rather, the litigant's qualified expression interest must be balanced against the court's interest in preserving the confidentiality of private information it has supplied that litigant.*

The Court acknowledged that a court has an interest in preserving the integrity of the discovery process by encouraging full investigation of the disputed facts and issues, and that such investigation will occur effectively only if the court can assure the parties that disclosed confidential materials will be used only for the purpose of litigation.

The *Tavoulareas* Court concluded that the Post's free expression interest, even as a litigant, must bow to the court's obligation to avoid a severe intrusion on Mobil's constitutionally protected privacy interest and to preserve the integrity of the discovery process. Absent a compelling interest supporting disclosure, the district court was ordered to reinstate the seal on the 3800 pages of deposition transcript never used at trial.

Relator Austin cites this Court to *Bernard v. Gulf Oil Company*, 619 F.2d 459 (5th Cir.1980), aff'd, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), which was an employment discrimination suit brought as a class action by six present or retired black employees of the Port Arthur, Texas, plant of Gulf Oil Co., under Title VII of the Civil Rights Act of 1964. Plaintiffs alleged that Gulf, the employer, and the unions had discriminated against them and other similarly situated blacks in hiring, job assignments, pay scales, discipline and discharge, etc. Relators focus on the fourth issue that was before the 5th Circuit. It concerned the validity of an order of the district court *restricting communications by named plaintiffs and their counsel with actual and potential class members* not formal parties to the suit. The majority found the order to be an unconstitutional prior restraint in violation of the First Amendment and Rule 23(d) Fed.R.Civ.P. 619 F.2d at 477–78.

The *Bernard* Court initially noted that the district court appeared to have acted upon the rationale of the model *Manual for Complex Litigation*, Part II, 1.41 (1973 Ed.) that the court has the power to enter a ban on communications in any actual or potential class action as a prophylactic measure against potential abuses envisioned by the *Manual*. *Id.* at 466. The Court further scrutinized the order, stating that:

> It silenced the named plaintiffs and their attorneys during the period that Gulf's

conciliation offers were outstanding and putative class members were considering whether to accept. A named plaintiff, questioned by the black employee working next to him concerning the suit or the relative advantages of conciliation award and suit, could not reply. The order cut off dialogue despite the contentions of plaintiff's counsel that some of the issues in the suit were not cured by the conciliation agreement to which plaintiffs and putative class members were not parties .... *It stopped investigation and discovery at a time when it is critical, just after suit has been filed.* (Emphasis supplied.)

*Id.* at 469–70. The Court found that the prior restraint on the speech of the litigants and their attorneys was not justified, and failed to overcome the "heavy presumption against its constitutionality," because (a) the record failed to sustain factual findings that the order was needed to prevent "direct, immediate and irreparable damage"; (b) the order was not the least restrictive means of accomplishing such an end; and (c) the Court failed to comply with required procedural safeguards in issuing the order. *Id.* at 473–78.

Applying a strict prior restraint standard, the *Bernard* Court held that the order is not brought within any exception permitting prior restraints merely because it arises in the general context of the administration of justice and the particular context of Rule 23. *Id.* at 474.

Relator Austin contends that the "prior restraint herein" as in *Bernard,* "sweeps too broadly" in that Austin's public officials are barred from discussing *all* information obtained through discovery, not just sensitive or prejudicial information. Further, relators both argue that their public officials, like the class plaintiffs in *Bernard,* represent the citizens of Austin and San Antonio and are responsible and accountable to those citizens respecting the disposition of this litigation. Relators claim their public officials are deprived of

their First Amendment rights because they are barred from soliciting feedback on the basis of disclosure of relevant facts. Furthermore, Relator Austin argues that the residents of the City of Austin, like the deprived potential class of litigants in *Bernard,* are deprived of their right and obligation to monitor the workings of government and of the knowledge and counsel of their elected and appointed officials because of the protective order which was inappropriately described as a "gag order."

The Supreme Court affirmed the 5th Circuit decision in *Bernard* in *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Implicit in this opinion is a recognition that there are governmental proceedings which legitimately may be closed to the public and the press in order to protect the right of a defendant to a fair trial, where the Court said:

> In the conduct of a case, a court often finds it necessary to restrict free expression of participants, including counsel, witnesses, and jurors. Our decision regarding the need for careful analysis of the particular circumstances is limited to the situation before us—involving a broad restraint on communication with class members [in a Civil Rights Act class action, 42 U.S.C. 2000 *et seq.*]. We also note that the rules of ethics properly impose restraints on some forms of expression. See, *e.g.* ABA Code of Professional Responsibility, DR 7–104 (1980).

452 U.S. at 104, n. 21, 101 S.Ct. at 2202, n. 21. *See also Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978).

It appears fair to conclude that litigants and their lawyers have a First Amendment interest in disseminating information procured through discovery. Notwithstanding the line of authority to the contrary, it would also seem fair to conclude that the nature of this First Amendment interest is somewhat limited, and thus, a Rule 26(c) order, and arguably a Rule 186b order, restricting expression should not be evalu-

ated by the stringent standards governing classic prior restraints.

This Court views the functions of the trial court regarding pre-trial discovery at this stage of the proceedings as a *discretionary matter* based on a strict reading of Rule 186b. The respondent, the Hon. G.P. Hardy, had before him enough information to ascertain the nature and magnitude of the moving parties' interests, and, therefore, the protective intervention by the Court was justified.

The movants complain that, when the protective order was entered, they were denied an opportunity to contest its entry. The record shows conclusively to the contrary. Their attorneys were present and participated in the hearing which led to the entry of the order. Their counsel had advance notice of the matters to be considered at the hearing and had copies of the proposed order. Although Austin and San Antonio responded to the Judge's request for comments and suggestions, neither made complaint concerning the propriety of taking judicial notice of any facts which would support the order. Their counsel remained silent throughout the hearing, making no objection to the invocation of TEX.R.EVID., Rule 201 by the trial judge. Neither of the cities nor any of the moving parties requested an opportunity to present evidence or voiced any objection to the court taking judicial notice that Bay City, where the court sits, is in close proximity to the nuclear project involved in the litigation and that the issues involved in the case are unusually emotional in nature. We find no error has been demonstrated nor any abuse of discretion shown. *See generally Skinner v. HCC Credit Co. of Arlington, Inc.*, 498 S.W.2d 708, 711 (Tex.Civ. App.—Fort Worth 1973, no writ).

Having considered the entire record and the authorities called to our attention, we find no error was committed by the eminently qualified trial judge in the entry of the protective order. All relief sought by the moving parties is denied. Each application for relief is refused.

## APPENDIX

HOUSTON LIGHTING & POWER COMPANY, INDIVIDUALLY AND AS PROJECT MANAGER UNDER THE SOUTH TEXAS PROJECT PARTICIPATION AGREEMENT BETWEEN THE CITY OF SAN ANTONIO, TEXAS, CENTRAL POWER AND LIGHT COMPANY HOUSTON LIGHTING & POWER COMPANY AND THE CITY OF AUSTIN, TEXAS, EXECUTED AS OF JULY 1, 1973, AS AMENDED, ET AL.

VS.

BROWN & ROOT, INC., ET AL.

IN THE DISTRICT COURT OF MATAGORDA COUNTY, TEXAS 130TH JUDICIAL DISTRICT

NO. 81–H–0686–C

### PROTECTIVE ORDER

WHEREAS, this Court is required to preserve the rights of all parties in this cause to a fair trial by an impartial jury; and

WHEREAS, this Court has previously ordered that no deposition testimony be released to the media by any of the parties to this litigation; and

WHEREAS, the likelihood is great that potential jurors will be prejudiced by pre-trial publicity, given the particular circumstances surrounding this cause, which this Court takes judicial notice, which include

1. The small size of Bay City, the town where the Court is located, and the proximity of the town to the South Texas Nuclear Project;

2. The unusually emotional nature of the issues involved;

3. The pretrial status of the suit;

4. The complexity of the suit, and the enormous number of documents involved, which, if selectively disclosed to third parties by the parties or their attorneys, could present materially false impressions as to the merits of the claims and their likelihood

of success and interfere with the right to a fair trial to which all parties are entitled;

5. The fact that despite the Court's order of October 11, 1983 and the provisions of Tex.R.Civ.P. 210, third parties have sought to obtain access to the depositions taken in this cause; and

WHEREAS, all parties to this cause have a constitutional right to a fair trial, while third parties have no constitutional nor common law right of access to pretrial documents obtained through the discovery process in a civil case; and

WHEREAS, this Court is entitled to issue protective orders, in its sound discretion and in light of the relevant facts and circumstances of the particular case, under Tex.R.Civ.P. 186b; it is hereby

ORDERED, ADJUDGED and DECREED that prior to trial

1. All attorneys to this action shall strictly adhere to the letter and spirit of the provisions of the Texas Code of Professional Responsibility governing comments to the media in civil cases. Specifically, all attorneys shall refrain from making extrajudicial statements which constitute an "opinion as to the merits of the claims or defenses of a party," or which are "reasonably likely to interfere with a fair trial of the action." DR 7–107(G).

2. All parties, attorneys, experts employed by the parties, court reporters, clerks and officers of the Court shall refrain from disclosing to third parties information obtained through the Court's discovery processes.

3. All depositions, interrogatories and answers thereto, requests for admissions and answers thereto, and all other documents that may be offered in evidence in this cause shall be filed under seal and shall be opened only by order of the Court.

4. If the Court determines that any party's right to a fair trial has been jeopardized by a violation of this Order, it may take appropriate action, including but not limited to dismissing the claims for relief of any party found in violation of the Order, or ruling that any document released to the press shall be inadmissible at trial.

5. This Order shall not be interpreted to prohibit attorneys from communicating with the parties in order to prepare for trial, nor shall it be interpreted to prohibit the third parties from attending any live sessions before the Court or from publishing any information they have already obtained or may obtain in the future. The term "third parties" includes any person or organization not a party, not an attorney for a party, or not a person employed by the parties or attorneys for the parties for the purpose of assisting in this litigation.

6. This Order covers only those documents obtained through the discovery process, including deposition testimony, which may be offered in evidence in this cause, and does not cover pleadings, briefs and legal memoranda.

7. The Court shall entertain reasonable requests to modify this Order as the need arises.

SIGNED this 29th day of December, 1983.

/s/ G.P. Hardy, Jr.
JUDGE PRESIDING

FILED

At 10:55 O'Clock A.M.

DEC 29, 1983

PAUL HATCHETT, Clerk Of District Court, Matagorda Co., Texas By /s/ G. Mariner, Deputy

Vol. 25 pg. 597–599

THE STATE OF TEXAS
COUNTY OF MATAGORDA

I, PAUL HATCHETT, Clerk of the District Court of Matagorda County, Texas, do hereby CERTIFY the within and foregoing to be a true and correct copy of

Agreed Protective Order signed October 11, 1983

Agreed Protective Order signed September 22, 1983

Agreed Protective Order signed June 22, 1983

Protective Order signed April 6, 1983

Agreed Protective Order signed September 26, 1983

Protective Order signed December 29, 1983

In Cause No. 81–H–0686–C, wherein

HOUSTON LIGHTING & POWER COMPANY, INDIVIDUALLY AND AS PROJECT MANAGER UNDER THE SOUTH TEXAS PROJECT PARTICIPATION AGREEMENT BETWEEN THE CITY OF SAN ANTONIO, TEXAS, CENTRAL POWER AND LIGHT COMPANY, HOUSTON LIGHTING & POWER COMPANY, AND THE CITY OF AUSTIN, TEXAS, EXECUTED AS OF JULY 1, 1973, AS AMENDED, ET AL, Plaintiff,

VS.

BROWN AND ROOT, INC., ET AL, Defendant,

as the same appears on file and of record in this office.

GIVEN UNDER MY HAND AND SEAL OF SAID COURT, at Bay City, Texas, on this the 11th day of January, 1984.

PAUL HATCHETT, Clerk, District Court, Matagorda County, Texas

By: /s/ Becky Denn, Deputy