

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-00435-CR
_____

NICOLE HICKS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2012-435,124, Honorable Bradley S. Underwood, Presiding

November 18, 2013

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

It is not often that civil and criminal law precepts collide in a criminal prosecution. Before us is an appeal wherein they do, though. The prosecution involved the withdrawal of monies from a joint bank account by a signatory of the account as well as the withdrawal of funds from a corporate account by the wife of a purported shareholder of the corporation. The party withdrawing the funds was Nicole Hicks, and the State accused her of theft for withdrawing those funds. The collision between civil and criminal law precepts we mentioned earlier arose when appellant sought to justify her

conduct by arguing that 1) a party to a joint account owns the funds therein and 2) an officer of a corporation or the wife of a corporate shareholder is entitled to withdraw funds from a corporate account and use them for personal benefit. Despite these contentions, the jury found appellant guilty of theft of money from an elderly individual in an amount between $20,000 and $100,000. We are now being asked if the evidence was sufficient to support the verdict, whether the trial court erred in admitting evidence of an extraneous offense, and whether she was denied the effective assistance of her trial counsel. We affirm.

*Legal Sufficiency*

Though the argument proffered by appellant on the sufficiency issues is rather lengthy, it can easily be narrowed. Appellant is simply arguing that 1) she cannot be convicted of stealing her own money and 2) the money taken was hers because she was a signatory of a joint bank account and a corporate officer and wife of a stockholder *viz* the corporate account. We overrule the issue.

Regarding the matter of the corporate account, an example of the argument put in action best illustrates its failing. Jim buys 100 shares of stock in Sears. Upon his completing the purchase, his wife travels to the local Sears store, removes an item off the shelf, places it in her pocket, and walks out the door without paying. Can she be prosecuted for theft? The answer is yes.

It has long been the law that a stockholder owns an interest in the company but not the assets of the company. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 645 (Tex. 1999). Rather, the assets, including the cash residing in corporate bank accounts, are owned by the corporation, and the latter is a separate legal entity from its

shareholders.  *Beverly Foundation v. W.W. Lynch,* 301 S.W.3d 734, 736 n.1 (Tex. App.—Amarillo 2009, no pet.).  So, Jim's status as a stockholder of Sears does not mean he (or his wife under community property law) may lawfully claim ownership or some possessory interest in any of the company's assets.  The same is no less true at bar.  Appellant being married to a supposed shareholder of T Bar Z, Inc. did not alone entitle her to possess or withdraw monies from the corporate account for her own use.

Just as it would be nonsensical for that shareholder of Sears to escape prosecution for theft because he *thought* being a stockholder meant he owned the items in the store, it would be similarly nonsensical for appellant to *believe* that her husband's supposed ownership of corporate stock allowed her to treat the assets of T Bar Z, Inc. as hers.[1]  Unfamiliarity with the long standing legal concepts pertaining to corporations and their status as entities distinct from their shareholders is no justification for her actions.  For over a century, it has been clear that "[e]very one is conclusively presumed to know the law, both as to civil and criminal transactions."  *Thompson v. State*, 9 S.W. 486, 486 (Tex. Crim. App. 1888): *accord Crain v. State,* 153 S.W. 155, 156 (Tex. Crim. App. 1913) (stating "[i]f appellant only did the acts he intended to do, believing that same was no violation of law, yet if in fact such acts were prohibited by law, he would be punishable, for all persons are presumed to know what the law prohibits one from doing").  Consequently, "[i]gnorance of the law is no excuse for violation of the law . . ., and no mistake of law excuses one committing an offense."  *Thompson v. State*, *supra.*

---

[1] This observation is made in response to appellant's argument that:

> The State must show that Appellant intended to deprive T Bar Z of property. TEX. PENAL CODE ANN. § 31.03(a). The State failed to provide any evidence that Appellant intended to take or deprive from T Bar Z. As previously mentioned Appellant thought that she owned part of T Bar Z; therefore, she incorrectly but understandably thought she could spend the funds within the T Bar Z account.

The same pertains to a corporate officer. Being such means the person is an officer or employee of a separate legal entity. The position alone does not entitle the individual to claim personal ownership of the corporate assets.

As for ownership of monies in a joint account, a "joint account agreement which authorizes funds to be paid to or withdrawn by one party allows the party to insist that the depository honor a request for payment but does not establish the right of that party to the funds against other claimants." *Stauffer v. Henderson*, 801 S.W.2d 858, 861 (Tex. 1990).[2] According to our Supreme Court, it "is not at all unusual for a person to deposit his or her funds into an account upon which another person is authorized to draw merely for the convenience of the depositor." *Id.* In such situations, the "owner of the money intends only to facilitate disbursement of the funds for his or her own purposes, not to transfer title to the co-signator on the account." *Id.* Thus, the "[c]reation of a joint account does not . . . necessarily create ownership in the co-signator on the account." *Bailey v. State*, No. 03-02-00623-CR, 2003 Tex. App. LEXIS 10141, at *15 (Tex. App.—Austin December 4, 2003, pet. ref'd) (not designated for publication). From this, we conclude that a party to a joint account is entitled to lawfully draw monies from the account. That authority alone, however, does not establish the party's ownership of the funds. Nor does it alone divest title to the funds from the actual owner.

That more than $200,000 was deposited into the joint account against which appellant could withdraw funds is undisputed. Similarly unquestioned is the evidence that the deposits were made by appellant's father-in-law or consisted of monies owned by him before deposit. Other evidence of record revealed that appellant was made a

---

[2] This case has been superseded to some extent by provisions of the Probate Code regarding the right of survivorship in joint accounts.

4

joint tenant in the account for purposes of expending the monies on behalf of her elderly father-in-law, who came to live with them. That appellant spent all the monies in the account and that the expenditures included the acquisition or improvement of property for herself and family members other than her father-in-law (remodeling and acquiring electronic home appliances for her house, for example) or the payment for services benefitting herself and family members other than her father-in-law (cosmetic surgery for herself and cheerleading classes for others, for instance) also finds support in the record. Other evidence reveals that appellant issued checks totaling more than $65,000 to her husband for purposes unrelated to her father-in-law's needs. Of course, appellant suggests that her father-in-law authorized many of her disbursements. And, while some may have been authorized (such as those related to the construction of a small abode for him adjacent to appellant's house) other evidence indicates that many (in excess of $20,000) were not. So, who or what to believe became a matter for the jury to resolve, which it obviously did in a manner adverse to appellant.

In sum, the record contained more than some evidence upon which a jury could conclude, beyond reasonable doubt, that appellant appropriated property valued between $20,000 to $100,000 without the owner's effective consent. *See Wright v. State*, No. 14-99-00042-CR, 2001 Tex. App. LEXIS 1775, at *12-13 (Tex. App.— Houston [14th Dist.] 2001, no pet.) (not designated for publication) (wherein appellant argued that she, as a partner in Timeless Treasures, was an owner of the business' property, and the court upheld her conviction after noting that the "evidence [was] clear from both the testimony of Newbill and appellant that the funds deposited into the joint account were to be used solely for the purposes of establishing Timeless Treasures as

5

an ongoing concern; appellant's access to, and permissible use of, those funds was limited to that purpose," and "appellant neither possessed the funds, nor had 'a greater right of possession' to the funds than Newbill because the funds were diverted to an improper use.").[3]

*Extraneous Offense*

Next, appellant complains about the admission of evidence involving a purportedly forged document. The trial court's decision to admit it allegedly violated Texas Rules of Evidence 404(b) and 403. We overrule the issue.

The evidence consisted of proving that a document created in 2003 and labeled "Purchase Option Agreement Amendment" was a forgery. As the argument goes, the document purported to show that appellant's husband had some kind of ownership interest in T Bar Z, Inc. The State sought to illustrate that the item was a forgery. If it did so, it would serve to rebut the contention that appellant's husband owned a portion of the corporation. And, in turn, that would serve to rebut appellant's contention that she was entitled to utilize corporate assets as her own. According to appellant, however, the evidence was irrelevant. Addressing these contentions leads us into a quandary.

Again, being a stockholder of a corporation does not grant the individual ownership interests in the company's assets. So, proving that appellant's husband was not a shareholder was of no significance. This, in turn, would mean that the evidence

---

[3] Appellant makes much of the opinion in *Gurrola v. State,* No. 08-01-00107-CR, 2003 Tex. App. LEXIS 8913, at *11-12 (Tex. App.—El Paso 2003, pet. ref'd) (not designated for publication). We find it unpersuasive for it fails to heed the civil law teachings of the Texas Supreme Court in *Stauffer* as they relate to the law regulating joint accounts. Again, access to a joint account and ownership of the monies therein are two different matters. Simply being able to write checks upon or make withdrawals from it does not *ipso facto* vest the party making those withdrawals with title to the monies taken or otherwise supplant the right of the depositor to the money.

about the Purchase Option Amendment being a forgery was irrelevant. Yet, it was appellant who sought to justify her conduct by asserting that her husband's supposed status as a shareholder entitled her to personally use corporate property. What we have, then, is a "rabbit trail" created by appellant and followed by the State. And, in creating that trail, we cannot but conclude that appellant invited the State to journey down it.

Yet, other means existed to nullify appellant's baseless attempt to justify her conduct. As noted by appellant, the actual owners of the corporation testified that appellant's husband had never been a stockholder. So too was much time and effort expended by the State in attempting to prove that the document was forged. The topic was also broached by the State in its final argument.

On the other hand, appellant acknowledged in her brief that she was never linked to the supposed forgery. Review of the record also discloses a plethora of evidence (aside from that concerning the forgery) supporting the jury's verdict.

Furthermore, the trial of appellant was captured in fourteen volumes; seven of those volumes (or approximately 1483 pages of testimony) pertained to the guilt/ innocence phase of the proceeding. So, the seventy pages attributable to the State's effort to vitiate the Option Amendment's validity fails to suggest that an inordinate amount of trial time was devoted to the effort.

Nor do we encounter evidence suggesting that the State had some ill or improper motive underlying its conduct. Moreover, the trial court authorized the State to proffer the evidence.

The alleged error at issue is non-constitutional. Thus, its occurrence cannot be a basis for reversal unless it affected appellant's substantial rights. Tᴇx. R. Aᴘᴘ. P. 44.2(b). That happened if the mistake had a substantial and injurious effect or influence on the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In other words, we must determine if it substantially swayed or influenced the jury's verdict. *Booker v. State,* 103 S.W.3d 521, 539-40 (Tex. App.—Fort Worth 2003, pet ref'd). Upon considering the record before us and the circumstances mentioned in the preceding paragraphs, we cannot say that it did here.

*Ineffective Assistance of Counsel*

Finally, appellant argues that her "trial counsel was ineffective for not requesting burden of proof and limiting instructions on the proper use . . . [of the forgery evidence] at the time the evidence was offered." We overrule the issue.

To prove ineffective assistance of counsel, appellant must show not only that her counsel's performance was deficient but also that she suffered prejudice as a result of it. *Cannon v. State,* 252 S.W.3d 342, 348-49 (Tex. Crim. App. 2008). Furthermore, when the record fails to show the reason for counsel's acts or failure to act, we may not generally find that counsel has been ineffective. *Menefield v. State,* 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

Here, the record is devoid of evidence indicating the rationale, if any, behind trial counsel's decision to forego requesting the instructions at issue. It may well be that he simply did not want to draw further attention to the matter. *See Hill v. State,* 303 S.W.3d 863, 879 (Tex. App.—Fort Worth 2009, pet. ref'd) (stating that counsel is not necessarily deficient for failing to request an instruction on extraneous offenses since it

8

is always possible that he did not wish to draw further attention to the matters).  Given this, we cannot say that appellant satisfied her burden of proving counsel's action to be deficient.

Having overruled each issue, we affirm the judgment.


                                        Brian Quinn
                                        Chief Justice

Publish.