

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00398-CV

OVATION FINANCE HOLDINGS 5 LLC, APPELLANT

V.

G.E.T. MARKETING, LLC; PSW REAL ESTATE, LLC;
AND STAPLETON GROUP, APPELLEES

On Appeal from the 459th District Court
Travis County, Texas
Trial Court No. D-1-GN-23-003968, Honorable Amy Clark Meachum, Presiding

April 15, 2024

OPINION[1]

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

*Background*

Picture the following hypothetical final exam question in the business entities class at Whatsamater U Law School. Jack runs a business wherein he invests and trades in equities, like common stock sold on a stock exchange. Often, money was borrowed from

---

[1] Because this appeal was transferred from the Third Court of Appeals, we apply its precedent should it conflict with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

lenders to effectuate his purchases. One of the equities purchased was ten shares of Berkshire Hathaway Inc., BRK A. Like many shareholders, he regularly attended annual meetings and voted the shares owned as part of his business. Eventual economic downturn adversely impacted his portfolio and financial worth. Fearing Jack's insolvency, one lender decided to petition for a receivership over his "property and business." Jack acceded, resulting in the trial court's appointment of a receiver over his "property and business." Because part of his "property and business" consisted of owning and managing the ten Berkshire shares, the trial court also placed Berkshire in receivership. Berkshire objected and moved to vacate same since it was not named in the lender's petition, not insolvent, and not a debtor of the lender. Jack and the lender contested the motion, arguing that Jack's "property and business" included the equitable interest in Berkshire and its management. Add into the situation a statute permitting a trial court to "appoint a receiver for the entity's property and business" when "the entity is insolvent or in imminent danger of insolvency." Now the final exam question is: should the trial court grant Berkshire's motion to dissolve the receivership over it?

Those circumstances generally reflect the non-hypothetical ones at bar. PSW Real Estate, LLC (PSW) was the investor/debtor purportedly bordering on insolvency, while G.E.T. Marketing, LLC (GET) was the creditor petitioning for receivership. The entities in which PSW owned a membership or equitable interest in were SB Webberville Road, LLC (Road) and PSW Webberville LLC (Webberville). PSW agreed to the receivership and the order executed by the trial court. Through that order, the trial court placed PSW and 55 "affiliates" into receivership. Two of the 55 were Road and Webberville. No one presented evidence showing that PSW, Road, or Webberville were

alter egos of each other or subject to having their respective corporate identities disregarded. Indeed, GET argued nothing like that in its petition. Nor did it actually 1) petition for a receiver over the 55 "affiliates," 2) prove it was a creditor of Road or Webberville, or 3) illustrate that Road or Webberville were insolvent.

And, though neither Road nor Webberville themselves moved to dissolve the receivership over them, another member or creditor of those entities did, Ovation Finance Holdings 5 LLC. So, part of the final exam question also includes an issue on standing. That is . . . does a creditor or non-managerial member of Road or Webberville have standing to attack the trial court's ruling at bar?

Respecting the distinct corporate identities involved, applying the definitions of "property and business" to the circumstances at bar, and complying with settled authority concerning receiverships, we answer the final exam question "yes" and reverse.

### *Analysis*

Section 11.404 of the Texas Business Organizations Code authorizes courts to appoint a rehabilitative receiver to conserve the "property and business" of an entity and to avoid damage to interested parties. TEX. BUS. ORGS. CODE ANN. §11.404(b)(1). The authority comes with caveats, though. Appointment is allowed if "all other requirements of law are complied with" and "all other available legal and equitable remedies, including the appointment of a receiver for specific property of the domestic entity under Section 11.402(a), are inadequate." TEX. BUS. ORGS. CODE ANN. § 11.404(b)(2), (3); *see Ritchie v. Rupe*, 443 S.W.3d 856, 863-64 (Tex. 2014) (discussing former rule). Furthermore, the legislature defined "business" to mean "a trade, occupation, profession, or other commercial activity," TEX. BUS. ORGS. CODE ANN. § 1.002(5), and "property" to include

3

"tangible and intangible property and an interest in that property." TEX. BUS. ORGS. CODE ANN. § 1.002(77).

The decision to appoint carries aspects of discretion. Thus, our review of it is under the standard of abused discretion. *Xr-5, LP v. Margolis*, No. 02-10-00290-CV, 2011 Tex. App. LEXIS 2181, at *4 (Tex. App.—Fort Worth Mar. 24, 2011, no pet.) (mem. op.); *City of Hughes Springs v. Hughes Springs Volunteer Ambulance Serv*., 223 S.W.3d 707, 709 n.1 (Tex. App.—Texarkana 2007, no pet.). And, discretion is abused when the trial court acts without reference to any guiding rules and principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). An instance of that consists of misapplying or misinterpreting the law. *In re Millwork*, 631 S.W.3d 706, 711 (Tex. 2021).

To the foregoing, we add another requirement of the law. It obligates us to recognize that corporations have separate identities, which separateness generally must be observed. *Neff ex rel. Weatherford Int'l. Ltd. v. Brady*, 527 S.W.3d 511, 525 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *Docudata Records Mgmt. Servs., Inc. v. Wieser*, 966 S.W.2d 192, 197 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)). For example, a subsidiary corporation and its parent corporation are separate and distinct "persons" as a matter of law. *ETC Tex. Pipeline, Ltd. v. Addison Expl. & Dev., LLC*, 582 S.W.3d 823, 837 (Tex. App.—Eastland 2019, pet. denied), *overruled in part on other grounds in Montelongo v. Abrea*, 622 S.W.3d 290 (Tex. 2021). Unless the corporate veil is used as a sham, it matters not that the parent dominates or controls the subsidiary or otherwise treats it as its instrumentality or agency. *Id.* Nor does commonality of directors or managers alone permit courts to avoid the separateness of which we speak. *Id.*

Similarly, because of their separate identities, corporations generally are not liable for each other's obligations. *Id.*

The same is true of corporations and their shareholders. They have distinct legal identities. *Hicks. v. State*, 419 S.W.3d 555, 558 (Tex. App.—Amarillo 2013, pet. ref'd). Indeed, a shareholder simply owns an interest in the corporation. *Id.* It is not the corporation. This also applies to limited liability companies. They too are legal entities separate from its members. *Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 567 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Sherman v. Boston*, 486 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Fowler v. Montis*, No. 13-13-00581-CV, 2014 Tex. App. LEXIS 12521, at *2-3 (Tex. App.—Corpus Christi Nov. 20, 2014, no pet.) (mem. op.); *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 109 (Tex. App.—San Antonio 2011, pet. denied). With that, we turn to the issues at hand.

### 1. Standing

We questioned Ovation's standing to seek vacation of the receiverships over Road and Webberville and asked the parties to brief same. They did. We also conducted our own research. It led us to the following conclusion. Standing exists.

According to our Supreme Court, "when a court takes control and custody of the property of a corporation by the appointment of a receiver, all creditors of the corporation are in effect or constructively before the court." *Security Trust Co. v. Lipscomb Cty*, 180 S.W.2d 151, 157-58 (Tex. 1944). Should they have notice of the proceedings, they also "are bound by the court's orders approving claims and determining rights in and to the property or its proceeds." *Id*. The record before us discloses that Ovation was a creditor of both Road and Webberville. It also had notice of the receiverships. Thus, it is "before

5

the court" and subject to its orders.  Being so subject, it has legal standing to question them, like that under attack here.

### 2. *Consent*

As alluded to earlier, the trial court appointed Stapleton Group, Inc., "to act and serve as the Court's appointed Receiver over PSW's operations and property . . . ."  It also defined "PSW" as "PSW Real Estate, LLC and its affiliates listed on Exhibit A."  Road and Webberville were two of the 55 "affiliates" named in that exhibit.

The appointment came in response to GET's "Emergency Application for Appointment of Receiver (the "Application") . . . ."  Unlike the trial court, though, GET did not allege or define, within the Application, PSW as any entity other than "PSW Real Estate, LLC."  Nor did its application mention any of the 55 affiliates or seek a receivership over any of them.

And, aside from the recital within the trial court's order alluding to "considering . . . the evidence," neither the parties nor the record illustrates that the court actually held an evidentiary hearing or formally received evidence.  Rather, it appears that the receivership emanated from the agreement of GET and PSW.  The trial court noted within its order that "PSW does not oppose the appointment of a rehabilitative receiver or the injunctive relief ancillary thereto."  Furthermore, legal counsel for PSW affixed his signature to the document evincing PSW "Agreed" to its "Form and Content."  But, unlike PSW, did Road or Webberville agree?

Neither of those entities were signatories to the order.  Nor did any attorney agree to it in "form and content" on their behalf.  Indeed, counsel for PSW signed the document merely as "Attorneys for Defendant PSW Real Estate LLC."  He did not purport to be

6

representing PSW as the court defined "PSW."  Similarly missing is evidence that either Road or Webberville were notified of GET's application, served with citation, appeared in the suit, or deemed insolvent before being placed in receivership.  These circumstances hardly support the notion that they consented to their respective receivership.  This may explain why neither the receiver nor GET relied on the ground in their respective appellate briefs.[2]  Instead, they argued that placing the 55 "affiliates" into receivership was appropriate because they were the property and business of PSW.

### 3.  *Property and Business*

Were Road and Webberville the "property and business" of PSW, as contemplated by § 11.404 of the Business and Commerce Code?  We answer "no" after applying the legal authority mentioned earlier.

No one disputes that PSW was a member of or otherwise owned an "equity interest" in Road and Webberville.  Nor does anyone suggest the corporate veils of Road and Webberville were used as a sham in some way by PSW.  Without the latter in play then, both we and the trial court must respect the distinct legal status or identity of Road and Webberville.  Moreover, PSW's membership interest likens to owning stock in a corporation.  As such, the former owned an interest in the latter, and that interest constituted property of PSW.  TEX. BUS. ORGS. CODE ANN. at § 101.106(a) (stating that a membership interest in a limited liability company is personal property).  Owning an interest in them, though, did not make PSW, Road, or Webberville one and the same.  Nor did it make the entities Road and Webberville themselves property of PSW; to hold otherwise would be to ignore the separate identities of each.  That means PSW's property

---

[2] Ovation broached the topic in its appellate brief.

7

subject to receivership under § 11.404(a) included its membership interest in the two other distinct entities, not the entities themselves.

As for whether Road and Webberville were PSW's "business" under § 11.404(a), we initially say that words grouped in a list should be given related meaning when construing a statute. *Ritchie*, 443 S.W.3d at 869. We heed that rule of construction when looking at the statutory definition of "business" assigned in the Business Organizations Code.

After mentioning "trade," "occupation," and "profession," the legislature ended the definition with the phrase "or other commercial activity." TEX. BUS. ORGS. CODE ANN. § 1.002(5). The latter passage sets the framework within which we read the former nouns. Simply put, "or other . . . activity" alludes to what the entity does or its job, so to speak. Thus, trade, occupation, and profession are to be read as alluding to the insolvent's business and its scope.[3] So, in permitting a trial court to "appoint a receiver for the entity's . . . business . . . ." TEX. BUS. ORGS. CODE ANN. § 11.404(a), the legislature merely allowed the court to place a receiver in the shoes of the insolvent entity. Once in those shoes, the receiver could then control or manage the insolvent's job, trade, or commercial activity, as allowed by law. Simply put, the focus rests on gaining control of the insolvent's business. The statute says nothing about placing distinct legal entities (irrespective of their financial stability) into receivership as well simply because the

---

[3] This comports with the common understanding of "trade," "occupation," and "profession." Each refers to what the entity regularly does as work or in commerce. *See Merriam-Webster.com/dictionary/trade* (defining "trade" as an occupation, business or work regularly engaged in) (last visited April 8, 2024); *Merriam-Webster.com/dictionary/occupation* (defining "occupation" as an activity in which one engages) (last visited April 8, 2024); *Merriam-Webster.com/dictionary/profession* (defining "profession" as a calling, vocation, or employment) (last visited April 8, 2024).

insolvent may have some financial interest in them. To do that would be to ignore the distinct legal status of the other entities. It would be tantamount to ignoring the expressed statutory conditions precedent to a receivership, such as insolvency, deadlocked management, illegal action by governing persons, the wasting of assets, or deadlocked shareholders. *See* TEX. BUS. ORGS. CODE ANN. § 11.404(a)(1)(A)-(E) (listing the conditions). And, we hesitate to read into the statute more authority than its own definitions encompass, especially when receiverships are harsh remedies, *Fortenberry v. Cavanaugh*, No. 03-04-00816-CV, 2005 Tex. App. LEXIS 4665, at *5-6 (Tex. App.—Austin June 16, 2005, no pet.) (mem. op), to be cautiously applied. *Elliott v. Weatherman*, 396 S.W.3d 224, 228-29 (Tex. App.—Austin 2013, no pet.). Here, that means the trial court could permit a receiver to step into PSW's shoes and control the latter's job, trade, work, vocation, or commercial activity. It does not mean the trial court could place into receivership distinct legal entities simply because PSW's business included commercial interaction with them.

If the foregoing were not so, then Jack's insolvency (harkening back to the final exam question) would authorize the appointment of a receiver over Berkshire Hathaway. The justification? Jack's job included his ownership and management of Berkshire Hathaway stock through which he exercised some control over the company by voting the shares. That is absurd, and we cannot construe a statute so as to bring about an absurd result. *See Rodriguez v. Safeco Ins. Co.*, 684 S.W.3d 789, ___, 2024 Tex. LEXIS 93, at *12-13 (Tex. Feb. 2, 2024).

In sum, PSW's insolvency may have warranted the appointment of a receiver. Yet, the extent of that appointment, given our construction of § 11.404(a), was limited. The

9

statute did not allow the trial court to exceed the definitions of "the entity's property and business" or disregard other statute requirements. *See* TEX. BUS. ORGS. CODE ANN. § 11.404(a). Nor did it allow the court to disregard the distinct legal identities of other corporations or limited liability companies. So, with PSW's being the purported insolvent "entity" at issue, the receivership could extend no further. It could not ensnare Road or Webberville into their own receiverships merely because they may be subsidiaries of or have business dealings with PSW. In placing Road and Webberville themselves in receivership, the trial court exceeded the scope of § 11.404(a), failed to abide by controlling rules and principles, and abused its discretion. Consequently, we reiterate our answer "yes" to the final exam question and reverse the trial court's order refusing to vacate the receiverships over Road and Webberville. So too do we enter the order which the trial court should have and order they be dissolved. TEX. R. APP. P. 43.3 (stating that when reversing, the appellate court generally must render the judgment that the trial court should have rendered).

Brian Quinn
Chief Justice